**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

ANNMARIE AVILA, an individual; on behalf
of herself and all others similarly situated,

                          Plaintiffs,

                vs.

RIEXINGER & ASSOCIATES, LLC, a
Georgia Limited Liability Company; CROWN
ASSET MANAGEMENT, LLC, a Georgia
Limited Liability Company; STEPHEN P.
RIEXINGER, an Individually and in His
Official Capacity; and, JOHN AND JANE
DOES NUMBERS 1 THROUGH 25,

                      Defendants.

---------------------------------------------------------------x

CASE NO.: 1:13-cv-04349-RJD-LB

<u>**CLASS ACTION**</u>

**FIRST AMENDED COMPLAINT FOR
VIOLATIONS OF THE FAIR DEBT
COLLECTION PRACTICES ACT, NEW
YORK GENERAL BUSINESS LAW, NEW
YORK GENERAL OBLIGATIONS LAW,
AND NEW YORK PENAL LAW, AND
RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS**

<u>**DEMAND FOR JURY TRIAL**</u>

## I.  PRELIMINARY STATEMENT

1.     Plaintiff, ANNMARIE AVILA ("Plaintiff" or "AVILA"), on behalf of herself and

all others similarly situated, brings this action for the illegal practices of Defendants, RIEXINGER

& ASSOCIATES, LLC ("RIEXINGER LLC"), STEPHEN P. RIEXINGER ("RIEXINGER"), and

CROWN ASSET MANAGEMENT, LLC ("CROWN ASSET") (collectively "Defendants") who,

*inter alia*, used false, deceptive, and misleading practices, and other illegal practices, in connection

with its attempts to collect an alleged debt from the Plaintiff and others.

2.     The Plaintiff alleges that Defendants' collection practices violate the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA").

3.     Such collection practices include, *inter alia*, sending consumers written

communications which make false representations or implications that an attorney is meaningfully

involved in the process of sending those communications, which fail to identify the creditor of the

alleged debt, and which fail to state the amount of the debt, which seeks to collect a usurious amount of interest, and which misstates the consumer's 30-day dispute and validation rights.

4.      The Plaintiff further alleges that Defendants' business practices violate: the New York General Business Law §349, which prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service; New York General Obligations Law § 5-501, which forbids usurious contracts; New York General Obligations Law § 5-511, which declares usurious contracts to be void; New York General Obligations Law § 5-513, which requires the disgorgement of all usurious interest collected; New York Penal Law § 190.40 and 190.42, which prohibits the charging of usurious interest, *i.e.* - interest in excess of 25%; and, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").

5.      The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The U.S. Congress, finding evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

6.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Second Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

7.      The FDCPA applies to lawyers regularly engaged in consumer debt-collection litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Goldman v. Cohen*, 445 F.3d 152, 155 (2d Cir. 2006).

8.      To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations prohibited by that section are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); false representations or implications that any individual is an attorney or that any communication is from an attorney, 15 U.S.C. §1692e(3); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and, the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

9.      To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8). Included among the *per se* violations prohibited in this section are the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly permitted by law, 15 U.S.C. § 1692f (1).

10.     To prohibit the use of unconscionable interest rates NY Gen. Oblig. L. § 511 and NY Gen. Oblig. L. § 513, declare as usurious an interest rate which exceeds 16% as set forth in the N.Y. Banking Law (*See*, N.Y. Bnk. Law § 14-a).

11.     To protect the interests of consumers, the New York State Legislature through NY Gen. Bus. L. § 349 has authorized individuals to act as private attorney generals by filing claims asserting violations of any acts or statutes by, e.g. a corporation.

12.     To prohibit unfair collection practices, the NY State Legislature enacted Penal Law 190.40, *et seq,* which is designed to punish the making of usurious loans as criminal behavior.

13.     The Plaintiff, on behalf of herself and all others similarly situated, seeks statutory damages, actual damages, punitive damages, injunctive relief, declaratory relief, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, NY Gen. Oblig. L. § 511 and NY Gen. Oblig. L. § 513, NY Penal Law 190.40 and 190.42, NY GBL 349, RICO, and all other common law or statutory regimes.

## II.  PARTIES

14.     AVILA is a natural person.

15.     At all times relevant to this lawsuit, AVILA is a citizen of, and resides in, the Village of Rockville Centere, Nassau County, New York.

16.     At all times relevant to this lawsuit, RIEXINGER LLC is a limited liability company existing pursuant to the laws of the State of Georgia.

17.     At all times relevant to this lawsuit, RIEXINGER LLC maintains its principal place of business at 3100 Breckinridge Blvd., Suite 722, Duluth, Georgia.

18.     Plaintiff is informed and believes, and on that basis alleges, that RIEXINGER is a natural person who resides in City of Snellville, Gwinnett County, Georgia.

19.     At all times relevant to this lawsuit, CROWN ASSET is a limited liability company existing pursuant to the laws of the State of Georgia.

20.     At all times relevant to this lawsuit, CROWN ASSET MANAGMENT maintains its principal place of business at 3100 Breckinridge Blvd, Suite 722, City of Duluth, Gwinnett County, Georgia.

21.     Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

22.     Plaintiff is informed and believes, and on that basis alleges, that Defendants JOHN AND JANE DOES NUMBERS 1 THROUGH 25 are natural persons and/or business entities all of whom reside or are located within the United States, and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of RIEXINGER LLC and CROWN ASSET that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by RIEXINGER LLC and CROWN ASSET and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

### III.  JURISDICTION & VENUE

23.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337.

24.     Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

25.     Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

26.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial

district, and because the Defendants are each subject to personal jurisdiction in the State of New York at the time this action is commenced.

## IV.  FACTS CONCERNING THE PARTIES

27.     Sometime prior to August 2, 2012, Plaintiff allegedly incurred a financial obligation to Wells Fargo ("Wells Fargo Obligation").

28.     The Wells Fargo Obligation is alleged to have arisen out of a transaction in which the money, property, insurance, or services, which are the subject of the transaction, are primarily for personal, family, or household purposes.

29.     At some point after Plaintiff's alleged default, the original creditor of the Wells Fargo Obligation determined that the debt was uncollectable, and therefore decided to "charge-off" the debt.

30.     Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

31.     Plaintiff is informed and believes, and on that basis alleges, that after concluding that the Wells Fargo Obligation was in default, Wells Fargo charged-off the Wells Fargo Obligation and, together with hundreds or thousands of other charged-off open-ended consumer credit accounts, sold the Wells Fargo Obligation, an unknown purchaser of defaulted consumer debts for pennies on the dollar.

32.     Defendants also contend that the Wells Fargo Obligation is in default.

33.     The alleged Wells Fargo Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

34.     Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

35.     Plaintiff is informed and believes, and on that basis alleges, that sometime prior to August 2, 2012, the creditor of the Wells Fargo Obligation either directly or through intermediate transactions assigned, placed, or transferred, the debt to CROWN ASSET for collection.

36.     According to its website, CROWN ASSET markets itself as a professional receivables management and consulting firm whose personnel have extensive experience in acquiring, collecting, and liquidating non-performing consumer debts that are in default.

37.     CROWN ASSET collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself and other debt buyers using the U.S. Mail, telephone, and Internet.

38.     Plaintiff is informed and believes, and on that basis alleges, that RIEXINGER is a principal owner, director, shareholder, and/or managing partner of CROWN ASSET, and also serves as CROWN ASSET's General Counsel, which is a fact Defendants at all times tried to conceal from Plaintiff and other similarly situated consumers in their attempts to collect debts.

39.     CROWN ASSET is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

40.     CROWN ASSET is not a "creditor" as defined by 15 U.S.C. § 1692a(4).

41.     At all times relevant to this complaint, CROWN ASSET charged, took, or received money or other property as interest on loans or forbearances of any money or other property, at a rate exceeding sixteen per centum per annum or the equivalent rate for a longer or shorter period in the State of New York.

42.     At all times relevant to this complaint CROWN ASSET was engaged in conduct that was part of a scheme or business of making or collecting usurious amounts of interest from the Plaintiff and other similarly situated consumers in the State of New York.

43.     Plaintiff is informed and believes, and on that basis alleges, that sometime prior to August 2, 2012, and within the one-year period immediately preceding the filing of the initial complaint in this action, CROWN ASSET either directly or through intermediate transactions assigned, placed, or transferred the Wells Fargo Obligation to RIEXINGER LLC and RIEXINGER for collection.

44.     RIEXINGER LLC collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

45.     RIEXINGER LLC is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

46.     On information and belief, RIEXINGER is a principal owner, director, shareholder, and/or managing partner of RIEXINGER LLC.

47.     RIEXINGER attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

48.     RIEXINGER personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw the illegal policies and procedures used by other employees of RIEXINGER LLC.

49.     RIEXINGER is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

50.     Neither RIEXINGER LLC nor RIEXINGER are licensed to practice law in the State of New York.

51.     With respect to consumers in the State of New York, at no time does RIEXINGER LLC or RIEXINGER pursue legal action concerning the debts it seeks to collect nor does CROWN ASSET ever authorize RIEXINGER LLC or RIEXINGER to ever pursue legal action.

52.     With respect to consumers in the State of New York, Plaintiff is informed and believes, and on that basis alleges, that RIEXINGER LLC and RIEXINGER act solely as a debt collector and not in any legal capacity when sending collection letters to Plaintiff and other similarly situated consumers.

53.     In an attempt to collect the Wells Fargo Obligation, Defendants sent Plaintiff a letter dated August 2, 2012 ("8/2/12 Letter"). A true and correct copy of the 8/2/12 Letter is attached hereto as ***Exhibit A***.

54.     The 8/2/12 Letter is a "communication" as defined by 15 U.S.C. §1692a(2).

55.     Plaintiff presumed, as would the "least sophisticated consumer," that the 8/2/12 Letter was in fact the work product of a licensed attorney as it stated, "The firm of Riexinger & Associates LLC is a law firm ***representing*** CROWN ASSET MANAGEMENT, LLC the current creditor….the above-referenced matter has been placed with us for collection and ***such action*** **as necessary to protect our client**" (Emphasis added).

56.     Plaintiff also presumed, as would the "least sophisticated consumer," that the 8/2/12 Letter was in fact the work product of a licensed attorney as it stated, "if you fail to contact this office, our client may consider ***additional remedies to recover*** the balance due." (Emphasis added).

57.      Plaintiff further presumed, as would the "least sophisticated consumer," that the 8/2/12 Letter was in fact the work product of a licensed attorney as it was personally signed by

RIEXINGER as an "Attorney at Law."

58.     The 8/2/12 Letter does implies that RIEXINGER and RIEXINGER LLC are licensed to practice law or pursue legal remedies in the State of New York.

59.     After receiving the 8/2/12 Letter, Plaintiff reasonably inferred, as would the "least sophisticated consumer," that CROWN ASSET was proceeding aggressively against Plaintiff in collecting the Wells Fargo Obligation as CROWN ASSET had incurred the expense to hire a law firm, to wit, RIEXINGER LLC, whose named partner, RIEXINGER, had taken the time to personally write Plaintiff a letter that threatens "such action as necessary" and pursuing "additional remedies" and had then signed the 8/2/12 Letter.

60.     Plaintiff understood the 8/2/12 Letter, as would the least sophisticated consumer, to be statements and conduct that only a licensed attorney could engage in or make, e.g., discussing what "our client" had asked RIEXINGER LLC and RIEXINGER to do and stating that additional "action" and "remedies" were imminent if Plaintiff failed to pay the amount demanded or call Defendants.

61.     As Plaintiff understood the 8/2/12 Letter, as would the least sophisticated consumer, the only way to settle the alleged Wells Fargo Obligation and avoid "additional remedies" such as a lawsuit and civil judgment was to call RIEXINGER LLC and/or RIEXINGER.

62.     As Plaintiff understood the 8/2/12 Letter, as would the least sophisticated consumer, RIEXINGER LLC and/or RIEXINGER are acting as an attorney for CROWN ASSET in communicating with the consumer concerning alleged debt.

63.     As Plaintiff understood the 8/2/12 Letter, as would the least sophisticated consumer, the debt collection process has entered into a phase where CROWN ASSET through its attorneys, will begin to use procedures established by law and known to attorneys to collect the

Wells Fargo Obligation.

64.     As Plaintiff understood the 8/2/12 Letter, as would the least sophisticated consumer, her property and interests were in potential jeopardy.

65.     As Plaintiff understood the 8/2/12 Letter, as would the least sophisticated consumer, Plaintiff believed and expected that CROWN ASSET hired RIEXINGER LLC and RIEXINGER in order to take legal action.

66.     As Plaintiff understood the 8/2/12 Letter, as would the least sophisticated consumer, she believed that if she failed to pay the amount of money demanded by RIEXINGER LLC and RIEXINGER, then those lawyer(s), who she believed were licensed to practice law in the State of New York, would use the legal process with which they are familiar and for the use of which they are specifically trained to obtain a mandatory order of payment, which order will be enforceable by penalties within the power of courts to impose.

67.     Defendants' attempt to vitiate their culpability of sending the FDCPA violative 8/2/12 Letter with the statement, "at this time no attorney with this firm has reviewed the particular circumstances of your account," however, as would the least sophisticated consumer, Plaintiff understood the 8/2/12 Letter to mean an attorney had, at the least, done a cursory review of Plaintiff's file and had determined legal action against Plaintiff was merited.

68.     Defendants' disclaimers included in the 8/2/12 Letter failed to make clear to the Plaintiff, and least sophisticated consumer, that RIEXINGER LLC and RIEXINGER were acting solely as a debt collector and *not* in any legal capacity in sending the letters.

69.     Defendants' disclaimer included in the 8/2/12 Letter that, "[a]t this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account," does little to clarify the role of RIEXINGER LLC and RIEXINGER in collecting the Wells Fargo

Obligation because it completely contradicts the statement contained in the letters—that CROWN ASSET retained a licensed law firm to collect the debt, which is implicitly licensed to practice law in New York – as well as their threats of pursuing post-judgment remedies if payment is not made.

70.     As Plaintiff understood the 8/2/12 Letter, RIEXINGER LLC and RIEXINGER raise the specter of potential legal action by using their law firm title and credibility, which falsely implied there are licensed to practice law in the State of New York, to collect a the Wells Fargo Obligation when neither was acting in their legal capacity when they sent the letter.

71.     The 8/2/12 Letter failed to make clear to Plaintiff that RIEXINGER LLC and RIEXINGER were not engaged by CROWN ASSET to file a lawsuit against Plaintiff.

72.     The 8/2/12 Letter failed to make clear to Plaintiff that RIEXINGER LLC and RIEXINGER are not licensed to practice law in the State of New York.

73.     The only purpose of the 8/2/12 Letter was to scare Plaintiff, and other least sophisticated consumers, into believing that CROWN ASSET had hired attorneys who were prepared to, and regularly do, sue consumers such as Plaintiff if quick arrangements are not made to pay the alleged debt.

74.     The only reason RIEXINGER personally signed the 8/2/12 Letter was to scare Plaintiff, and other least sophisticated consumers, into believing that CROWN ASSET had now hired attorneys who were prepared to, and regularly do, sue consumers such as Plaintiff if quick arrangements are not made to pay the alleged debt.

75.     The fact that the 8/2/12 Letter appears to be personally signed by a licensed attorney, lends significant credence to Plaintiff's presumption that these letters were in fact authored, and directed to be sent, by an attorney licensed by the State of New York who had reviewed the particular circumstances of her account prior to mailing same.

76.     The 8/2/12 Letter falsely represents and implies that a New York licensed attorney was directly or personally involved in reviewing Plaintiff's file or account prior to the mailing of the 8/2/12 Letter.

77.     Defendants intended that the 8/2/12 Letter imply a heightened severity over dunning letters from non-attorney collection companies and that the least sophisticated consumers react with a commensurate level of alarm and concern thereby giving them an unfair business advantage over non-attorney debt collection companies.

78.     Sometime after receiving the 8/2/12 Letter, Plaintiff became informed and now believes, and on that basis alleges, that the 8/2/12 Letter is actually computer-generated, mass-produced, letter that is sent *en masse* to consumers at-large without any meaningful attorney review or involvement and with no intention of following through on the threats of legal action contained therein.

79.     At all times relevant to this complaint, CROWN ASSET knowingly charged, took, or received money or other property as interest on loans or forbearances of any money or other property, at a rate exceeding thirty-two per centum per annum or the equivalent rate for a longer or shorter period in the State of New York.

80.     At all times relevant to this complaint, CROWN ASSET was engaged in conduct that was part of a scheme or business of making or collecting usurious loans from the Plaintiff and other similarly situated consumers in the State of New York.

81.     At all times relevant to this complaint, CROWN ASSET was engaged in conduct that was part of a scheme or business of collecting usurious loans from the Plaintiff and other similarly situated consumers in the State of New York.

82.     At all times relevant to this complaint, CROWN ASSET knowingly possessed writings, papers, instruments and/or articles used to record criminally usurious transactions prohibited by New York Penal Law § 190.40 with respect to Plaintiff and other similarly situated consumers in the State of New York.

83.     At all times relevant to this complaint, RIEXINGER LLC knowingly charged, took, or received money or other property as interest on loans or forbearances of any money or other property, at a rate exceeding thirty-two per centum per annum or the equivalent rate for a longer or shorter period in the State of New York.

84.     At all times relevant to this complaint, RIEXINGER LLC was engaged in conduct that was part of a scheme or business of making or collecting usurious loans from the Plaintiff and other similarly situated consumers in the State of New York.

85.     At all times relevant to this complaint, RIEXINGER LLC was engaged in conduct that was part of a scheme or business of collecting usurious loans from the Plaintiff and other similarly situated consumers in the State of New York.

86.     At all times relevant to this complaint, RIEXINGER LLC knowingly possessed writings, papers, instruments and/or articles used to record criminally usurious transactions prohibited by New York Penal Law § 190.40 with respect to Plaintiff and other similarly situated consumers in the State of New York.

87.     At all times relevant to this complaint, RIEXINGER knowingly charged, took, or received money or other property as interest on loans or forbearances of any money or other property, at a rate exceeding thirty-two per centum per annum or the equivalent rate for a longer or shorter period in the State of New York.

88.     At all times relevant to this complaint, RIEXINGER was engaged in conduct that was part of a scheme or business of making or collecting usurious loans from the Plaintiff and other similarly situated consumers in the State of New York.

89.     At all times relevant to this complaint, RIEXINGER was engaged in conduct that was part of a scheme or business of collecting usurious loans from the Plaintiff and other similarly situated consumers in the State of New York.

90.     At all times relevant to this complaint, RIEXINGER knowingly possessed writings, papers, instruments and/or articles used to record criminally usurious transactions prohibited by New York Penal Law § 190.40 with respect to Plaintiff and other similarly situated consumers in the State of New York.

91.     None of the Defendants are a savings bank, savings and loan association, or federal savings and loan association.

92.     Plaintiff was not aware, and through reasonable diligence could not have been aware, CROWN ASSET did not own the Wells Fargo Obligation referenced in the 8/2/12 Letter. The fact of ownership, or lack thereof, was known only to the Defendants and their employees and was concealed by them until October 29, 2013, the first opportunity on which Plaintiff could have known he was injured in violation of the FDCPA on the theories alleged in this First Amended Complaint.

93.     Plaintiff was not aware, and through reasonable diligence could not have been aware, that the Defendants were attempting to collect ongoing accrued amounts of interest with respect to the Wells Fargo Obligation referenced in the 8/2/12 Letter. These facts were known only to the Defendants and their employees and were concealed by them until October 29, 2013, the date the Plaintiff first could have known he was injured in violation of the FDCPA on the theories

alleged in this First Amended Complaint.

94.    Plaintiff was not aware, and through reasonable diligence could not have been aware, that the Defendants were attempting to collect a usurious amount of interest with respect to the Wells Fargo Obligation referenced in the 8/2/12 Letter. These facts were known only to the Defendants and their employees and were concealed by them until October 29, 2013, the date the Plaintiff first could have known he was injured in violation of the FDCPA, NY Gen. Oblig. L. § 511 and NY Gen. Oblig. L. § 513, NY Penal Law 190.40 and 190.42, NY GBL 349, and RICO on the theories alleged in this First Amended Complaint.

95.    Plaintiff is informed and believes, and on that basis alleges, that the statement in the 8/2/12 Letter that "CROWN ASSET MANAGEMENT, LLC the current creditor" is false.

96.    Plaintiff is informed and believes, and on that basis alleges, that "CROWN ASSET MANAGEMENT, LLC" is not the "current creditor" of the Wells Fargo Obligation.

97.    The statement made in the 8/2/12 Letter that, "Unless within 30 days after receipt of this notice you dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid ***by the creditor*** and by this Firm" is false, deceptive, and misleading in that the FDCPA only permits an assumption of validity for the debt collector, not the creditor, in the event a consumer fails to dispute the validity of the debt.

98.    The 8/2/12 Letter states that the "Current Balance" due on the Wells Fargo Obligation is "$1,845.31," however, unbeknownst to Plaintiff, the "Current Balance" stated in the letter did not disclose that the balance was accruing interest that the Defendants would attempt to collect in the future.

99.    The 8/2/12 Letter states that the "Current Balance" due on the Wells Fargo Obligation is "$1,845.31," however, unbeknownst to Plaintiff, the "Current Balance" that

Defendants sought to collect contained a usurious amount of interest (i.e., in excess of 500% annually) that was accruing on a daily basis.

100.    New York General Obligation Law § 5-501 states that the "rate of interest...upon the loan or forbearance of any money, goods, or things in action...shall be six per centum per annum unless a different rate is prescribed in section fourteen-a of the banking law."

101.    Section 14-a(l) of New York's Banking Law, in turn, provides that "[t]he maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum.

102.    New York Penal Law § 190.40 states that a "person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period." Criminal usury in the second degree is a class E felony.

103.    New York Penal Law § 190.42 states that a "person is guilty of criminal usury in the first degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period and either the actor had previously been convicted of the crime of criminal usury or of the attempt to commit such crime, or the actor's conduct was part of a scheme or business of making or collecting usurious loans." Criminal usury in the first degree is a class C felony.

104.    New York Penal Law § 190.45 states that a "person is guilty of possession of usurious loan records when, with knowledge of the contents thereof, he possesses any writing,

paper, instrument or article used to record criminally usurious transactions prohibited by section 190.40." Possession of usurious loan records is a Class A Misdemeanor.

105.    New York General Obligations Law §5-511 provides that, subject to exceptions not applicable in the instant case (e.g. certain shipping-related loans, and loans made by a "savings bank, a savings and loan association or a federal savings and loan association") contracts which provide for payments greater than that authorized by New York General Obligations Law §5-501 are void.

106.    Although case law interpreting usury in New York has permitted creditors to collect post-default interest at rates in excess of 16%, the courts of New York have limited even limited even creditors who are collecting defaulted debts to New York's 25% criminal usury rate.

107.    Moreover, a non-national bank assignee does not get the benefit of the federal exemption under New York law. See, e.g. New York General Obligations Law, § 13-105, which states in relevant part that "Where a claim or demand can be transferred, the transfer thereof passes an interest, which the transferee may enforce by an action or special proceeding, or interpose as a defense or counter-claim, in his own name, as the transferrer might have done; subject to any defense or counter-claim, existing against the transferrer, before notice of the transfer, or against the transferee. *But this section does not apply, where the rights or liabilities of a party to a claim or demand, which is transferred, are regulated by special provision of law...*" (emphasis added).

108.    The 8/2/12 Letter fails to correctly state the "in full" amount of the debt allegedly owed.

109.    Although the 8/2/12 Letter lists a "Current Balance" and demands payment in full, the letter does not state the date on which the "Current Balance" was calculated, and does not explain that interest would continue to accrue on the unpaid principal; thus, Plaintiff's total balance

might be greater on the date she makes a payment.

110.    Although the 8/2/12 Letter states a "Current Balance" and demands payment in full, the letter also fails to disclose to Plaintiff that CROWN ASSET would attempt to collect the additional accruing interest at a later date.

111.    Upon receiving the 8/2/12 Letter, Plaintiff was uncertain whether the "Current Balance" was accruing interest as there was no disclosure or admonition indicating otherwise.

112.    Upon reviewing the 8/2/12 Letter, Plaintiff incorrectly believed, as would the least sophisticated consumer, that the "Current Balance" was calculated on the date the letter was written and that it was static and her payment of that amount would satisfy the Wells Fargo Obligation irrespective of when her payment was remitted.

113.    In the months following the 8/2/12 Letter, CROWN ASSET added the undisclosed usurious interest to the principal balance of the alleged Wells Fargo Obligation and then made further efforts to collect the increased amounts from Plaintiff.

114.    The 8/2/12 Letter collection would cause the least sophisticated consumer uncertainty and force s/he to guess how much money s/he allegedly owed CROWN ASSET, how much money would accrue daily on his/her alleged debt, how much additional money s/he would owe if they paid the amount demanded in the 8/2/12 Letter, and if/when Defendants' collection efforts would actually stop if s/he remitted "Current Balance" demanded.

115.    Plaintiff is informed and believes, and on that basis alleges, that the Defendants, and each of them, are mere alter egos of one another who share, *inter alia*, the same resources, equipment, mailing address, office space, and personnel.

116.    Plaintiff is informed and believes, and on that basis alleges, that CROWN ASSET is responsible for the printing and mailing of the 8/2/12 Letter and others like it that are sent to

Plaintiff and other similarly situated consumers using RIEXINGER LLC and RIEXINGER law firm letterhead.

117.    Plaintiff is informed and believes, and on that basis alleges, that the mailing address listed on the law firm letterhead of RIEXINGER LLC and RIEXINGER belongs to CROWN ASSET.

118.    Plaintiff is informed and believes, and on that basis alleges, that CROWN ASSET pays RIEXINGER LLC and RIEXINGER a modest fee for its renting of their law firm letterhead to send Plaintiff and other similarly situated consumers mass-produced, computer generated collection letters.

119.    Plaintiff is informed and believes, and on that basis alleges, that at a minimum, at all times relevant to the collection of the alleged Wells Fargo Obligation, there existed a principal-agent relationship between CROWN ASSET on the one-hand, and RIEXINGER LLC and RIEXINGER on the other hand.

120.    At a minimum, at all times relevant to the collection of the alleged Wells Fargo Obligation, RIEXINGER LLC and RIEXINGER were also the agents for CROWN ASSET, acting within the course and scope of their employment at the time of the incidents complained of herein, and were under the direct supervision, control, and approval of CROWN ASSET.

121.    At a minimum, at as the principal and a debt collector, CROWN ASSET is vicariously liable for the illegal collection activities of other debt collection companies and collectors, such as RIEXINGER LLC and RIEXINGER, who are working on its behalf to collect debts from consumers like Plaintiff.

## V.  POLICIES AND PRACTICES COMPLAINED OF

122.    It is Defendants' policy and practice to send written collection communications, in the form attached as **_Exhibit A_** in connection with the collection of alleged consumer debts, which make false, deceptive, and misleading representations that any person is an attorney or that any communication is from an attorney and which make other materially false, deceptive, and misleading statements. Such policies and practices are in violation of 15 U.S.C. §§ 1692e, 1692e(3), 1692e(5), and 1692e(10).

123.    "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989).

124.    "A debt collection letter on an attorney's letterhead conveys authority and credibility." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989).

125.    It is Defendants' policy and practice to send written collection communications, in the form attached as **_Exhibit A_** in connection with the collection of alleged consumer debts, which make false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt, and which otherwise fail to correctly state the amount of the debt in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

126.    It is Defendants' policy and practice to send written collection communications, in the form attached as **_Exhibit A_** in connection with the collection of alleged consumer debts, which make false, deceptive, and misleading representations concerning the name of the creditor to whom the alleged debt is owed in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692g(a)(2).

127.   It is also Defendants' policy and practice to charge, collect, and attempt to collect interest in excess of the interest rate set by New York's usury laws, *inter alia*, by means of communications such as **_Exhibit A_**, that falsely state that the interest rate for an account is higher than the maximum amount that can be charged under New York's usury laws, and that incorrectly calculate the "Current Balance" on the basis of the higher, unlawful interest rate.

128.   It is the Defendants' standard policy and practice to threaten to take action that cannot legally be taken or that is not intended to be taken, i.e. - charging interest in excess of the maximum interest rate allowed by New York's usury laws.

129.   It is the Defendants' standard policy and practice to collect or attempt to collect interest at a rate higher than permitted by law.

130.   New York General Obligations Law §5-501 provides:

**§ 5-501. Rate of interest; usury forbidden**

> **1.   The rate of interest, as computed pursuant to this title, upon the loan or forbearance of any money, goods, or things in action, except as provided in subdivisions five and six of this section or as otherwise provided by law, shall be six per centum per annum unless a different rate is prescribed in section fourteen-a of the banking law.**

> **2.   No person or corporation shall, directly or indirectly, charge, take or receive any money, goods or things in action as interest on the loan or forbearance of any money, goods or things in action at a rate exceeding the rate above prescribed. The amount charged, taken or received as interest shall include any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance as defined by the [fig 1] superintendent of financial services pursuant to subdivision three of section fourteen-a of the banking law except such fee as may be fixed by the commissioner of taxation and finance as the cost of servicing loans made by the property and liability insurance security fund. . . .**

131.   New York Banking Law §14-a(1) provides:

> **§ 14-a. Rate of interest; [fig 1] superintendent of financial services to adopt regulations**

1.  The maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum.

2.   The rate of interest as so prescribed under this section shall include as interest any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for the making of a loan or forbearance as defined by the superintendent [fig 1] pursuant to subdivision three of this section.

3.  The superintendent [fig 1] shall have the power [fig 2] to adopt such regulations as [fig 3] the superintendent shall deem necessary or proper to implement the provisions of this section. The superintendent [fig 4] shall make available to the public copies of all regulations adopted pursuant to this section.

4.  Such regulations as shall have been adopted pursuant to the provisions of this chapter and in effect immediately prior to the effective date of this section, shall continue in effect until such time as new regulations shall have been adopted by the superintendent [fig 1] and shall become effective.

5.   Whenever reference is made in this chapter or in any other law, contract or document to the rate of interest prescribed or to be prescribed by the superintendent [fig 1] pursuant to this section or any former section fourteen-a of this chapter, such reference shall be deemed a reference to the rate of interest prescribed in subdivision one of this section.

6.  Notwithstanding the provisions of subdivision five of this section, the rate of interest charged, taken or received on any loan or forbearance, which would have otherwise been subject to the provisions of former section fourteen-a of this chapter, made or entered into between the effective date of this section and the first day of February, nineteen hundred eighty-one pursuant to a commitment which was made or entered into prior to the effective date of United States Public Law 96-161 and which provides for interest at the prevailing rate at the time of closing shall not exceed the rate of eleven and one-quarter per centum per annum.

7.  Nothing contained in this section nor in any other provision of this act whereunder this section is added to the banking law shall be deemed to prohibit the charging of interest at the rates provided or permitted by United States Public Laws 96-161, 96-221 and 96-399, where applicable.

132.    The regulations referred to, 3 NYCRR § 4.1, provide:

**§ 4.1 Interest rate.**

**For the purpose of General Obligations Law sections 5-501 and 5-524, and Banking Law sections 108(1), 173(1), 202(1), 235-b, 380-e, 454(6), 510-a(1) and 577(1), and except as otherwise provided by law, the maximum rate of interest to be charged, taken or received, upon a loan or forbearance of any money, goods, or things in action is as follows:**

**Effective July 1, 1968..........7.25% per annum**

**Effective February 16, 1969..........7.50% per annum**

**Effective August 15, 1973..........8.00% per annum**

**Effective October 11, 1973..........8.50% per annum**

**Effective December 8, 1978..........9.50% per annum**

**Effective May 1, 1979..........9.75% per annum**

**Effective August 1, 1979..........10.00% per annum**

**Effective November 1, 1979..........10.25% per annum**

**Effective February 1, 1980..........10.50% per annum**

**Effective May 1, 1980..........10.75% per annum**

**Effective August 1, 1980..........11.00% per annum**

**Effective November 1, 1980..........11.25% per annum**

**Effective December 1, 1980..........16.00% per annum**

133.    Under New York General Obligations Law §5-511, any loan which exceeds the prescribed rate of interest is void.

134.    New York General Obligations Law §5-511, "Usurious contracts void," provides:

**1.    All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken,**

any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, shall be void, except that the knowingly taking, receiving, reserving or charging such a greater sum or greater value by a savings bank, a savings and loan association or a federal savings and loan association shall only be held and adjudged a forfeiture of the entire interest which the loan or obligation carries with it or which has been agreed to be paid thereon. If a greater sum or greater value has been paid, the person paying the same or his legal representative may recover from the savings bank, the savings and loan association, or the federal savings and loan association twice the entire amount of the interest thus paid.

2.    Except as provided in subdivision one, whenever it shall satisfactorily appear by the admissions of the defendant, or by proof, that any bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt, has been taken or received in violation of the foregoing provisions, the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled.

135.    On information and belief, the Defendants are attempting to collect one or more portfolios of high-interest loans from Plaintiff and other similarly situated consumers in the State of New York and that, in doing so, added a usurious amount of interest to those debts.

136.    At all times relevant to this complaint, the Defendants knowingly charged, took, or received money or other property as interest on loans or forbearances of any money or other property, at a rate exceeding sixteen per centum per annum or the equivalent rate for a longer or shorter period in the State of New York.

137.    At all times relevant to this complaint, the Defendants engaged in conduct that was part of a scheme or business of making or collecting usurious loans from the Plaintiff and other similarly situated consumers in the State of New York.

138.    At all times relevant to this complaint, the Defendants knowingly possessed writings, papers, instruments and/or articles used to record usurious transactions with respect to Plaintiff and other similarly situated consumers in the State of New York.

139.    On information and belief, the Defendants' written communications, in the form attached as ***Exhibit A*** and as alleged in this complaint under the Facts Concerning Plaintiff, number in at least the hundreds.

## VI. FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST ALL DEFENDANTS)

140.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Amended Complaint.

141.    The Defendants' written communications in the form attached as ***Exhibit A*** are false, deceptive, and misleading in violation of 15 U.S.C. § 1692e.

142.    The Defendants' written communications in the form attached as ***Exhibit A*** make false representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A).

143.    The Defendants' written communications in the form attached as ***Exhibit A*** constitute a false threat to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. §1692e(5).

144.    The Defendants' written communications in the form attached as ***Exhibit A*** constitute the use of a false representation and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. §§1692e and 1692e(10).

145.    The Defendants' written communications in the form attached as ***Exhibit A*** constitute the use of an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f.

146.    The Defendants' written communications in the form attached as **_Exhibit A_** constitute an attempt to collect interest not expressly authorized by any agreement between consumers and Defendants or permitted by law in violation of 15 U.S.C. § 1692f(1).

147.    The Defendants' written communications in the form attached as **_Exhibit A_** fails to provide the name of the creditor to whom the debt is owed in violation of 15 U.S.C. § 1692e, 1692e(2)(A), and 1692g(a)(2).

148.    The Defendants' written communications in the form attached as **_Exhibit A_** fails to correctly state the amount of the debt owed in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692g(a).

149.    The Defendants' written communications in the form attached as **_Exhibit A_** falsely and impermissibly advises the consumer that the debt will be assumed to be valid by the creditor if the consumer fails to timely dispute the alleged debt owed in violation of 15 U.S.C. §§ 1692e and 1692g(a)(3).

150.    The Defendants' written communication in the form attached as **_Exhibit A_** constitutes the use of a false representation that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating in violation of 15 U.S.C. §§1692j.

## CLASS ALLEGATIONS

151.    Plaintiff brings this claim on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

152.    The First Plaintiff Class consists of (a) all persons in the State of New York (b) to whom Defendants sent a written communication materially similar to the form attached as **_Exhibit A_**, which failed to advise that RIEXINGER LLC and RIEXINGER were acting solely as a debt

collector and not in any legal capacity in sending the letters; (c) in an attempt to collect a debt on behalf of CROWN ASSET; (d) which was not returned as undelivered by the United States Postal Service; (e) during period of July 31, 2012, and ending August 21, 2013.

153.    The class is so numerous that joinder of all members is not practicable.

154.    On information and belief, there are at least 40 individuals with New York addresses, from whom Defendants sent a written communication materially similar to the form attached as *__Exhibit A__*, which failed to advise that RIEXINGER LLC and RIEXINGER were acting solely as a debt collector and not in any legal capacity in sending the letters during the class period identified above.

155.    There are questions of law and fact common to the First Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendants' written communications, in the form attached as *__Exhibit A__*, violate 15 U.S.C. §§ 1692e, 1692e(3), 1692e(5), 1692e(10), and 1692j.

156.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

157.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

158.    A class action is superior for the fair and efficient adjudication of this matter, in that:

(a)      Individual actions are not economically feasible;

(b)      Members of the class are likely to be unaware of their rights; and

(c)      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

159.     The Second Plaintiff Class consists of (a) all persons in the State of New York (b) to whom Defendants sent a written communication materially similar to the form attached as *__Exhibit A__*, which did not state that the "Current Balance" due would continue to accrue interest; (c) in an attempt to collect a debt on behalf of CROWN ASSET; (d) which was not returned as undelivered by the United States Postal Service; (e) during period of July 31, 2012, and ending August 21, 2013.

160.     The Third Plaintiff Class consists of (a) all persons in the State of New York (b) to whom Defendants sent a written communication materially similar to the form attached as *__Exhibit A__*, which sought to collect a "Current Balance" that included more than 25% APR in post-charge off interest; (c) in an attempt to collect a debt on behalf of CROWN ASSET; (d) which was not returned as undelivered by the United States Postal Service; (e) during period of July 31, 2012, and ending August 21, 2013.

161.     The class is so numerous that joinder of all members is not practicable.

162.     On information and belief, there are at least 40 individuals with New York addresses, sent a written communication materially similar to the form attached as *__Exhibit A__*, which did not state that the "Current Balance" due would continue to accrue interest during the class period identified above.

163.     There are questions of law and fact common to the Second Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendants' initial written communications, in the form attached as *__Exhibit A__*, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692g(a), 1692f, and 1692f(1).

164.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

165.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

166.     A class action is superior for the fair and efficient adjudication of this matter, in that:

   (a)  Individual actions are not economically feasible;

   (b)  Members of the class are likely to be unaware of their rights; and

   (c)  Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

167.     The Third Plaintiff Class consists of (a) all persons in the State of New York (b) to whom Defendants sent a written communication materially similar to the form attached as ***Exhibit A***, which failed to provide the name of the creditor to whom the debt is owed; (c) in an attempt to collect a debt on behalf of CROWN ASSET; (d) which was not returned as undelivered by the United States Postal Service; (e) during period of July 31, 2012, and ending August 21, 2013.

168.     The class is so numerous that joinder of all members is not practicable.

169.     On information and belief, there are at least 40 individuals with New York addresses, sent a written communication materially similar to the form attached as ***Exhibit A***, which failed to provide the name of the creditor to whom the debt is owed during the class period identified above.

170.     There are questions of law and fact common to the Third Plaintiff Class, which common issues predominate over any issues involving only individual class members. The

principal issues are whether the Defendants' initial written communications, in the form attached as ***Exhibit A***, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692g(a).

171.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

172.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

173.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    (a)    Individual actions are not economically feasible;

    (b)    Members of the class are likely to be unaware of their rights; and

    (c)    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

174.    The Fourth Plaintiff Class consists of (a) all persons in the State of New York (b) to whom Defendants sent a written communication materially similar to the form attached as ***Exhibit A***, which impermissibly advises the consumer that the debt will be assumed to be valid by the creditor if the consumer fails to timely dispute the alleged debt; (c) in an attempt to collect a debt on behalf of CROWN ASSET; (d) which was not returned as undelivered by the United States Postal Service; (e) during period of July 31, 2012, and ending August 21, 2013.

175.    The class is so numerous that joinder of all members is not practicable.

176.    On information and belief, there are at least 40 individuals with New York addresses, that received a written communication materially similar to that attached as ***Exhibit A***, which impermissibly advises the consumer that the creditor will assume the debt is valid if the

consumer fails to timely dispute the alleged debt during the class period – July 31, 2012 to August 21, 2013.

177.    There are questions of law and fact common to the Fourth Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendants' initial written communications, in the form attached as ***Exhibit A***, violate 15 U.S.C. §§ 1692e and 1692g(a).

178.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

179.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

180.    A class action is superior for the fair and efficient adjudication of this matter, in that:

(a)    Individual actions are not economically feasible;

(b)    Members of the class are likely to be unaware of their rights; and

(c)    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**VII. SECOND CAUSE OF ACTION**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(AGAINST ALL DEFENDANTS)**

181.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Amended Complaint

182.    The Defendants' collection actions complained of herein, include the attempted collection of usurious amounts, including but not limited to Defendants' representations to consumers that Defendants are entitled to collect the amounts represented in the collection letters,

or that interest is accruing on the account and Defendants are entitled to include such interest in the balance statement, either and both of these collections actions constitute a deceptive business practice in violation of NY GBL § 349.

183. Defendants engaged in deceptive acts and practices, in violation of NY GBL §349 by attempting to a usurious amount of interest from consumers.

184. Defendants engaged in deceptive acts and practices, in violation of NY GBL §349 by falsely representing the "Current Balance" to be an enforceable debt that did not include any amounts of accruing interest.

185. The Defendants' actions complained of herein were committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of NY GBL § 349 independent of whether it also constituted a violation of any other law.

186. The Defendants' actions complained of herein are consumer-oriented, involving deceptive representations made in form/standardized correspondence with large numbers of consumers. The violations alleged herein are recurring and have a broad impact upon the public.

187. Indeed, although Plaintiff cannot say with certitude exactly how many such deceptive form letters were sent over the past three years, it is virtually certain to be in the hundreds, if not thousands.

188. Rather, upon information and belief, the overstatements of "Current Balances" and charging a usurious amount of interest to consumers, as described herein, is part of a policy and practice that is designed and has the effect of unlawfully increasing Defendants' profits.

189. Defendants' deceptive acts, by their nature, involve material misrepresentations of the interest chargeable and accruing on the accounts that Defendants are attempting to collect.

190. Defendants engaged in such conduct in the course of trade and commerce.

191.    Defendants knowingly or recklessly disregarded the unlawful nature of the debts they sought to collect.

192.    As a result of these violations of NY GBL § 349, Plaintiff has suffered actual and statutory damages of up to $1,000.00, attorney's fees, and costs as a result of these violations.

## CLASS ALLEGATIONS

193.    Plaintiff brings this claim on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

194.    The Fifth Plaintiff Class consists of (a) all individuals with New York addresses (b) from whom Defendants sought to collect a debt with a "Current Balance" that included more than 25% APR in post-charge off interest (d) where any communication or collection activity (including credit reporting) occurred on or after March 3, 2011.

195.    The class is so numerous that joinder of all members is not practicable.

196.    On information and belief, there are at least 40 individuals with New York addresses, from whom Defendants sought to collect a debt with a "Current Balance" that included more than 25% APR in post-charge off interest where any written communication or collection (including credit reporting) occurred on or after March 3, 2011.

197.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are (a) whether Defendants engage in a practice of attempting to collect debts containing a usurious amount of interest, and, (b) whether Defendants represented, expressly or by implication, that they had the right to collect those debts.

198.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

199.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

200.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      (a)     Individual actions are not economically feasible; and

      (b)     Members of the class are likely to be unaware of their rights.

## VIII. THIRD CAUSE OF ACTION
## VIOLATIONS OF NEW YORK GENERAL OBLIGATIONS LAW § 5-501, *ET SEQ.*
## (AGAINST ALL DEFENDANTS)

201.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Amended Complaint.

202.     Defendants violated NY Gen. Oblig. L. § 5-501, *et seq.* by charging, collecting and/or attempting to collect interest in excess of the civil usury limit of 16% [set forth in New York General Obligation Law § 5-501 and New York's Banking Law §14-a(l)] and New York's criminal usury limit of 25% (NY Penal Law §§ 190.40, 190.42).

203.     Pursuant to NY Gen. Oblig. L. § 5-511, Plaintiff and the class which she seeks to represent are entitled to have all debts on which Defendants charged, collected, and/or attempted to collect usurious interest declared void.

204.     Pursuant to NY Gen. Oblig. L. § 5-513, Plaintiff and the class which she seeks to represent are entitled to disgorgement of all sums paid in excess of the maximum interest rate. NY Gen. Oblig. L. § 5-513 provides:

> **Every person who, for any such loan or forbearance, shall pay or deliver any greater sum or value than is allowed to be received pursuant to section 5-501, and his personal representatives, may recover in an action against the person who shall have taken or received the same, and his personal representatives, the amount of the money so paid or value delivered, above the rate foresaid.**

## CLASS ALLEGATIONS

205.    Plaintiff brings this claim on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

206.    The Sixth Plaintiff Class consists of (a) all individuals with New York addresses (b) from whom Defendants sought to collect a debt with a "Current Balance" that included more than 25% APR in post-charge off interest (c) by an entity which did not possess a bank charter (d) where any communication or collection activity occurred on or after March 3, 2011, or where the loan is shown on Defendants' business records as unpaid in whole or in part.

207.    The class is so numerous that joinder of all members is not practicable.

208.    On information and belief, there are at least 40 individuals with New York addresses, from whom Defendants sought to collect a debt with a "Current Balance" that included more than 25% APR in post-charge off interest, by an entity which did not possess a bank charter, where any communication or collection activity occurred on or after March 3, 2011, or where the loan is shown on Defendants' business records as unpaid in whole or in part.

209.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether Defendants engage in a practice of attempting to collect illegal debts.

210.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

211.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

212.    A class action is superior for the fair and efficient adjudication of this matter, in that:

(a)     Individual actions are not economically feasible; and

(b)     Members of the class are likely to be unaware of their rights.

## IX. FOURTH CAUSE OF ACTION
## VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
### (AGAINST ALL DEFENDANTS)

213.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Amended Complaint.

214.    Each of the Defendants is a "person."

215.    CROWN ASSET is an "enterprise," being a lawfully organized Georgia limited liability company, whose affairs affect interstate commerce, as evidenced by its collection from Georgia of high-interest, usurious, loans made to, or debts owed by, residents of New York and other states throughout the nation using the United States Mails.

216.    RIEXINGER LLC is an "enterprise," being a lawfully organized Georgia limited liability company, whose affairs affect interstate commerce, as evidenced by its collection from Georgia of high-interest, usurious, loans made to, or debts owed by, residents of New York and other states throughout the nation using the United States Mails.

217.    Each of the debts allegedly owed by Plaintiff and the class members is an "unlawful debt" as defined in 18 U.S.C. §1961(6), in that it is a debt "which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury" and "which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate". In each case, the rate of interest was more than double the 16% permitted in New York.

218.    Each of the Defendants has received income derived, directly or indirectly, from the collection of an "unlawful debt" in which such person has participated as a principal within the

meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

219.    CROWN ASSET violated 18 U.S.C. §1962(b), in that through the collection of an unlawful debt it acquired and/or maintained, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

220.    RIEXINGER LLC violated 18 U.S.C. §1962(b), in that through the collection of an unlawful debt it acquired and/or maintained, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

221.    RIEXINGER violated 18 U.S.C. §1962(b), in that through the collection of an unlawful debt he acquired and/or maintained, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

222.    RIEXINGER violated 18 U.S.C. §1962(c), in that, being the sole manager of RIEXINGER LLC, and a managing member of CROWN ASSET, which is are enterprises engaged in, and whose activities affect, interstate or foreign commerce, and he conducts or participates, directly or indirectly, in the conduct of RIEXINGER LLC and CROWN ASSET affairs through the collection of portfolios of debts that include amounts of interest that is more than twice the state law usury limit.

223.    RIEXINGER LLC violated 18 U.S.C. §1962(c), in that, being associated with CROWN ASSET, it conducted the affairs of CROWN ASSET through the collection of unlawful debt, by engaging in the activities of which affect, interstate or foreign commerce, by conducting or participating, directly and/or indirectly, in the conduct of CROWN ASSET's affairs through the

-38-

collection of portfolios of usurious debts that included interest that was more than twice the state law usury limit.

224.    CROWN ASSET violated 18 U.S.C. §1962(c), in that, being associated with RIEXINGER LLC, it conducted the affairs of RIEXINGER LLC through the collection of unlawful debt, by engaging in the activities of which affect, interstate or foreign commerce, by conducting or participating, directly and/or indirectly, in the conduct of RIEXINGER LLC's affairs through the collection of portfolios of usurious debts that included interest that was more than twice the state law usury limit.

## CLASS ALLEGATIONS

225.    Plaintiff brings this claim on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

226.    The Seventh Plaintiff Class consists of (a) all individuals with New York addresses (b) from whom Defendants sought to collect a debt with a "Current Balance" that included more than 32% in post-charge off interest (c) by an entity that did not possess a bank charter (d) where any amount was collected or paid on or after March 3, 2010.

227.    The class is so numerous that joinder of all members is not practicable.

228.    On information and belief, there are at least 40 individuals with New York addresses, from whom Defendants sought to collect a debt with a "Current Balance" that included more than 32% in post-charge off interest by an entity that did not possess a bank charter, where any amount was collected or paid on or after March 3, 2010.

229.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are (a) whether Defendants engage in a practice of attempting to collect illegal

debts that charge more than twice the rate permitted under state law (b) whether Defendants authorized or directed each other to engage in such conduct and (c) whether the other Defendants directed, authorized, or engaged in such conduct.

230.    Plaintiff's claims are typical of the claims of the class members. All claims are based on the same factual and legal theories.

231.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

232.    A class action is superior for the fair and efficient adjudication of this matter, in that:

(a)    Individual actions are not economically feasible; and

(b)    Members of the class are likely to be unaware of their rights.

## X. PRAYER FOR RELIEF

233.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor, and in favor of the Plaintiff Classes set forth above, as follows:

A.    **For the FIRST CAUSE OF ACTION**:

(i)    An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the First Plaintiff Class, Second Plaintiff Class, Third Plaintiff Class, and Fourth Plaintiff Class, as previously set forth and defined above;

(ii)    An award of the maximum statutory damages for Plaintiff and the First Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(iii)    An award of the maximum statutory damages for Plaintiff and the Second Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(iv)    An award of the maximum statutory damages for Plaintiff and the Third Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(v)    An award of the maximum statutory damages for Plaintiff and the Fourth Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(vi)    Declaratory relief adjudging that the Defendants' written collection communications, in the form attached hereto as **_Exhibit A_**, violates the FDCPA;

(vii)    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(viii)    For such other and further relief as may be just and proper.

B.    **For the SECOND CAUSE OF ACTION**:

(i)    An order certifying that the Second Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the Fifth Plaintiff Class as previously set forth and defined above;

(ii)    An award of actual damages or $50.00 whichever is greater, and treble damages up to $1000.00, to Plaintiff and each member of the Fifth Plaintiff Class pursuant to NY GBL § 349(h);

(iii)    Declaratory relief adjudging that the Defendants' written collection communications, in the form attached hereto as **_Exhibit A_**, violate the NY GBL § 349(h);

(iv)    Declaratory relief adjudging that the Defendants' collection of usurious interest violates the NY GBL § 349(h);

(v)    Injunctive relief enjoining the Defendants from engaging in the unlawfully deceptive acts complained of herein including, but not limited to, collecting usurious interest and sending written collection communications, in the forms attached hereto as ***Exhibit A***;

(vi)    Attorney's fees, litigation expenses, and costs pursuant to NY GBL § 349(h); and

(vii)    For such other and further relief as may be just and proper.

C.    **For the THIRD CAUSE OF ACTION**:

(i)    An order certifying that the Third Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the Sixth Plaintiff Class as previously set forth and defined above;

(ii)    Entry of a judgment declaring that all accounts held by Defendants on which Defendants have charged, collected, or attempted to collect interest in excess of New York's usury limit are void;

(iii)    Entry of a judgment ordering restitution of all amounts paid by way of disgorgement of all interest and fees collected by Defendants in excess of the maximum interest rate allowed under New York's law;

(iv)    Entry of a permanent injunction barring Defendants' practice of charging and/or collecting interest and fees in excess of New York's usury limit in violation NY Gen. Oblig. L. § 5-501, *et seq.*;

(v)    Entry of a permanent injunction requiring the creditor of the debts Defendants sought to collect to surrender and cancel any evidence of the usurious loans at issue in this lawsuit;

(vi)    To the extent the Defendants have reported any of the void debts to the credit reporting bureaus, an injunction requiring correction of those affected credit reports;

(vii)    Attorney's fees, litigation expenses, and costs; and

(viii)    For such other and further relief as may be just and proper.

D.    **For the FOURTH CAUSE OF ACTION**:

(i)    An order certifying that the Fourth Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the Seventh Plaintiff Class as previously set forth and defined above;

(ii)    An award of treble actual damages to Plaintiff and each member of the Seventh Plaintiff Class pursuant to 18 U.S.C. § 1964(c).

(iii)    Entry of a judgment declaring that all accounts held by the creditor(s) on which Defendants have charged, collected, or attempted to collect interest in excess of New York's usury limit are void;

(iv)    Entry of a judgment ordering restitution of all amounts paid by way of disgorgement of all interest and fees collected by Defendants in excess of double the maximum interest rate allowed under New York's law;

(v)    Entry of a permanent injunction barring Defendants' practice of charging and/or collecting interest and fees in excess of double New York's usury limit in violation

NY Gen. Oblig. L. § 5-501, *et seq.*;

(vi)    Entry of a permanent injunction requiring Defendants, and the creditors of the usurious debts at issue herein, to surrender and cancel any evidence of the usurious debts at issue in this lawsuit;

(vii)    To the extent the Defendants have reported any of the void debts to the credit reporting bureaus, an injunction requiring correction of those affected credit reports;

(viii)    An Order by the District Court that RIEXINGER divest himself of any interest, direct or indirect, in CROWN ASSET;

(ix)    Attorney's fees, litigation expenses, and costs; and

(x)    For such other and further relief as may be just and proper.

## XI. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

DATED:    Uniondale, New York
             March 3, 2014

> *s/ Abraham Kleinman*
> Abraham Kleinman (AK-6300)
> KLEINMAN, LLC
> 626 RXR Plaza
> Uniondale, NY 11556-0626
> Telephone:  (516) 522-2621
> Facsimile:   (888) 522-1692
> E-Mail:  akleinman@kleinmanllc.com
>
> *One of the Attorneys for Plaintiff, Annmarie Avila, and all others similarly situated.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————— x

ANNMARIE AVILA, an individual; on behalf
of herself and all others similarly situated,

                        Plaintiffs,

             vs.

RIEXINGER & ASSOCIATES, LLC, a
Georgia Limited Liability Company; CROWN
ASSET MANAGEMENT, LLC, a Georgia
Limited Liability Company; STEPHEN P.
RIEXINGER, an Individually and in His
Official Capacity; and, JOHN AND JANE
DOES NUMBERS 1 THROUGH 25,

                    Defendants.

———————————————————— x

CASE NO.:  1:13-cv-04349-RJD-LB

**CERTIFICATE OF SERVICE**

       I, Abraham Kleinman, being duly admitted to practice law in the State of New York and in the United States District Court for the Eastern District of New York, hereby affirm under the penalties of perjury that on March 3, 2014, I served the within documents and all supporting papers on the Clerk of this Court using the CM/ECF system. I also certify that the foregoing documents are being served this day on all counsel of record and Parties to this action in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/EFC or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

DATED:       Uniondale, New York
                March 3, 2014

                     *s/ Abraham Kleinman*
                     Abraham Kleinman (AK-6300)
                     KLEINMAN LLC
                     626 RXR Plaza
                     Uniondale, NY 11556-0626
                     Telephone: (516) 522-2621
                     Facsimile:  (888) 522-1692
                     E-Mail: akleinman@kleinmanllc.com

                     *One of the Attorneys for Plaintiff, Annmarie Avila, and all others similarly situated.*

# EXHIBIT "A"

**Riexinger & Associates, LLC**

*Attorneys at Law*
P. O. Box 956188
Duluth, GA 30095-9504
(800) 713-7780

08/02/2012



File No.:            91██████
Account #:       57744219827█████
Current Balance:  $1,845.31

Dear Annmarie Avila:

The firm of Riexinger & Associates, LLC is a law firm representing CROWN ASSET MANAGEMENT, LLC, the current creditor of the above referenced account which originated with WELLS FARGO. In this regard, the above referenced matter has been placed with us for collection and such action as necessary to protect our client.

At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.

If you have any questions regarding this matter, please contact this office at 678-205-1597 or toll free at 800-713-7780 between the hours of 8:00 A.M. and 8:00 P.M. on Monday through Friday.

CONSUMER NOTICE PURSUANT TO 15 U.S.C. SECTION 1692(G)

You are hereby given notice of the following information concerning the above referenced debt: 1. Unless, within 30 days after receipt of this notice you dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the creditor and by this Firm. 2. If you notify us in writing within said 30 days that the debt, or any portion thereof is disputed, we will obtain verification of the debt, or a copy of any judgement against you, and we will mail such verification to you. 3. In addition, upon your written request within said 30 days, this Firm will provide the name and address of the original creditor if the original creditor is different from the current creditor. 4. This firm is attempting to collect a debt on behalf of the creditor and any information obtained will be used for that purpose. YOUR RIGHTS UNDER FEDERAL LAW TO REQUEST VERIFICATION OF YOUR OBLIGATION TO OUR CLIENT WITHIN 30 DAYS MUST BE ASSERTED IN WRITING AND IS NOT AFFECTED BY OUR REQUEST THAT YOU CONTACT OUR OFFICE BY TELEPHONE.

Sincerely,

Stephen P. Riexinger
Attorney at Law
Riexinger & Associates, LLC

Riexinger & Associates, llc is acting as a debt collector and this is a communication from a debt collector, as defined by U.S.C. 1692 (A)(6). This is an attempt to collect a debt and any information obtained will be used for that purpose.
**PLEASE REFER ALL CORRESPONDENCE TO RIEXINGER & ASSOCIATES, LLC**

---

Detach and return below portion with payment

Riexinger & Associates, LLC
P.O. Box 956188
Duluth, GA 30095-9504            005770

File Number:      912500

Pay your bill online for FREE at www.riexingerlaw.com

37821***AUTO**MIXED AADC 350
Annmarie Avila            ##27
██████████
Rockville Centre NY 11570-4244

Visa [ ] MasterCard [ ]
Card Holder Name: _____
Card Holder Signature: _____
CREDIT CARD NO
☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐
EXPIRATION DATE        PAYMENT AMOUNT:
☐☐☐☐                  $

REMIT TO:

Riexinger & Associates, LLC
P.O. Box 956188
Duluth, GA 30095-9504

Name:            Annmarie Avila
Account #:       57744219827█████
Current Balance:  $1,845.31

00001  05:05