**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

—————————————————————— x

ANNMARIE AVILA, an individual; on behalf
of herself and all others similarly situated,

               Plaintiffs,

    vs.

RIEXINGER & ASSOCIATES, LLC, a
Georgia Limited Liability Company; CROWN
ASSET MANAGEMENT, LLC, a Georgia
Limited Liability Company; STEPHEN P.
RIEXINGER, an Individually and in His
Official Capacity; and, JOHN AND JANE
DOES NUMBERS 1 THROUGH 25,

              Defendants.

—————————————————————— x

CASE NO.: 1:13-cv-04349-RJD-LB

 

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### *ORAL ARGUMENT REQUESTED*

Andrew T. Thomasson, Esq.
THOMASSON LAW, LLC
101 Hudson Street, 21st Floor
Jersey City, NJ 07302-3929
Telephone: (201) 479-9969
Facsimile:  (855) 479-9969
E-Mail: andrew@thomassonllc.com

Abraham Kleinman, Esq.
KLEINMAN, LLC
626 RXR Plaza
Uniondale, NY  11556-0626
Telephone: (516) 522-2621
Facsimile: (888) 522-1692
E-Mail: akleinman@kleinmanllc.com

[Additional Counsel Listed on Last Page]

*Attorneys for Plaintiff, Annmarie Avila,*
*and all others similarly situated*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........…………….....................…………………………………iii

I.     PRELIMINARY STATEMENT..................……….........…….…………………1

II.    INTRODUCTION.………………………..........................…….…………………1

III.   PROCEDURAL HISTORY.............……………………………………………….2

IV.    RELEVANT FACTS CONTAINED IN THE FIRST
       AMENDED COMPLAINT...........…………………………………………………4

V.     APPLICABLE LEGAL STANDARD..................…………………………………7

VI.    ARGUMENT.....................……………………………………………………….8

       A.    Defendant's Letter Violates §1692e(2)(A) of the FDCPA
             Because It Makes False Representations of the Character,
             Amount or Legal Status of a Debt..............................................……8

       B.    Defendant's Letter Violates§1692e(3) of the FDCPA Because
             It Makes False Representations That an Attorney Meaningfully
             Reviewed the Letter..............................................................………10

       C.    Defendant's Letter Violates §1692e(5) of the FDCPA
             Because It Fails To Take Action That Cannot Be Legally
             Taken Or That Is Not Intended To Be Taken................................13

       D.    Defendant's Letter Violates §1692e(10) FDCPA Because
             Defendant's Letter is False, Deceptive and Misleading…….…………..14

       E.    Defendant's §1692f of the FDCPA Because Defendants
             Are Attempting to Collect Interest Not Expressly Authorized
             by Any Agreement Between Plaintiff's and Defendant's and
             the Amount of Interest Added is Usury…......………………………………15

             i.     Plaintiff's §1692f Claim is Timely………………….…………15

             ii.    Defendants Are Attempting to Collect Interest, Costs
                    and Fees Not Expressly Authorized in the Agreement
                    Creating the Debt…........................................................…16

             iii.   Defendants Are Attempting to Collect a Usurious
                    Rate of Interest…….......………………………………………17

i

F.     *Defendant's Letter Violates §1692f of the FDCPA Because
       It Fails To disclose the amount of the Debt, It Fails to Name
       the Original Creditor And Impermissibly Advises the Consumer
       That The Debt Will Be Assumed To Be Valid By The Creditor
       If the Consumer Fails To Timely Dispute The Alleged Debt*.........…..........19

       i.      Defendants Fail to Disclose the Amount of Debt...................18

       ii.     Defendants Fail to Identify the Original Creditor..................20

       iii.    Defendants Falsely State Consumers Rights
               Regarding Debt Violation...........…….............……………..……..20

G.     *Defendant's Violated §1692j of the FDCPA by Using A
       Form Letter that Creates the Illusion That A Law Firm
       Acting as a Law Firm is Actively Involved in the Collection
       of a Debt*…………………………...................................................22

H.     *Because Defendants' Letter Was Deceptive, it Violates
       New York General Business Law §349*……….........…………………….23

I.     *Defendant's Violated §5-505 of the New York General
       Obligations Law by Charging a Usury Interest Rate of 500%*.................24


VII.   **CONCLUSION**......................................................................25

ii

# TABLE OF AUTHORITIES

**Cited Cases:**

*Adlam v. FMS,*
No. 09 Civ. 9129(SAS), 2010 WL 1328958 (S.D.N.Y. April 5, 2010)…..........………...19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)…………….......………………………………………………………..7

*Avila v. Rubin,*
84 F.3d 222 (7th Cir. 1996)……………………………………………………………..11,12

*Baker v. Cuomo,*
58 F.3d 814 (2d Cir. 1995)……………........……………………………………………22

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)………........……………………………………………………7,8

*Clomon v. Jackson,*
988 F.2d 1314 (2d Cir. 1993)……………………………………………………...……..11

*Crossley v. Lieberman,*
868 F.2d 566, 570 (3d Cir. 1989)……………………………………………...……11

*Contemporary Mission, Inc. v. New York Times Co.,*
665 F.Supp. 248 (S.D.N.Y.), aff'd, 842 F.2d 612 (2d Cir.)……........…………..………15

*DM Research v. College of Am. Pathologists,*
170 F.3d 53 (1st Cir1999)…..........……………………………………………...……22

*Dragon v. I.C. System, Inc.,*
483 F.Supp.2d at 198 (D.Conn. 2007)……...........……………………………..9,19

*FTC v. Shaffner,*
626 F.2d 32 (7th Cir. 1980)……........…………………………………………...…….8

*Goldman v. Cohen,*
445 F.3d 152 (2d Cir. 2006)……………………………………………..……18

*Gonzalez v. Kay,*
577 F.3d 600 (5th Cir. 2009)……………………………………………………11

*Greco v. Trauner, Cohen & Thomas L.L.P.,*
412 F.3d 360, 364 (2d Cir. 2005)……………………………………………10,11,12

*Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP,*
    217 F. Supp. 2d 336 (E.D.N.Y. 2002)………......………………………....……….8

*Harlan v. NRA Group, LLC,*
    2011 U.S. Dist. LEXIS 12751 (E.D. Pa. Feb. 9, 2011)……......…………………...……21

*Iyamu v. Clarfield, Okon, Salomone & Pincus, P.L.,*
    950 F. Supp. 2d 1271 (S.D. Fla. 2013)………......…………………………...……21

Jackson v. Aman Collection Serv.,
    No. IP 01–0100–C–T/K, 2001 WL 1708829 (S.D. Ind. Dec. 14, 2001)…...........……9,19

*Jacobson v. Healthcare Fin. Servs.,*
    516 F.3d 85 (2d Cir. 2008)………….......………………………………………………8

*Jones v. Midland Funding, LLC,*
    775 F.Supp.2d 393 (D. Conn. Dec. 16. 2010)…………..………………………..…9,18,19

*Lesher v. Mitchell N. Kay,*
    650 F.3d 993 (3d Cir. 2011)……………………………………………………..11,12

*Marquette Nat. Bank of Minneapolis vs. First Omaha Service Corp,*
    439 U.S. 299 (1978)………………......…………………………………………24

*McStay v. I.C. System, Inc.,*
    308 F.3d 188 (2d Cir. 2002)……………………………………………...……18

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,*
    214 F.3d 872 (7th Cir. 2000)……………………………………………...…9,19

*Miller v. Wolpoff & Abramson, LLP,*
    321 F.3d 292 (2d Cir. 2003)……………………………………………….…..11

*Nielsen v. Dickerson,*
    307 F.3d 623 (7th Cir. 2002)………......……………………………….......…..22

*O'Reilly v. New York Times Co.,*
    488 U.S. 856 109 S.Ct. 145 (1988)……………......…………………………….15

*Orr v. Westport Recovery Corp.,*
    941 F. Supp. 2d 1377 (N.D. Ga. 2013)…………......…………………………….21

*Patzka v. Viterbo College,*
    917 F. Supp. 654 (W.D. Wisc. 1996)……………….........………..……………….17

*Pifko v. CCB Credit Services, Inc.,*
    No. 09-3057, 2010 WL 2771832 (E.D.N.Y. July 7, 2010)…..........……………..8,9,18,19

iv

*Pipiles v. Credit Bureau of Lockport*,
    886 F.2d 22 (2d Cir. 1989)........................................................................8,13

*Pollice v. National Tax Funding L.P.*,
    25 F.3d 379 (3d Cir. 2000)….......................................................…..17

*Rosenberg v. Martin*,
    478 F.2d 520 (2d Cir. 1973), cert. denied, 414 U.S. 872 (1973)…………………….…..16

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir.2013)…......…………………………………...……..7

*Russell v. Equifax A.R.S.*,
    74 F.3d 30 (2d Cir. 1996)….......………………………………………..……8

*Savino v. Computer Credit*,
    164 F.3d 81 (2d Cir. 1998)…………………………………………………12

*Shapiro v. Riddle & Associates, P.C.*,
    351 F.3d 63 (2d Cir. 2003)……………………………………………16

*Smith v. Lyons, Doughty & Veldhuius, P.C.*,
    No. 07–5139, 2008WL 2885887 (D.N.J. July 23,2008)..........…………………….9,19

*Tri–Ex Enterprises v. Morgan Guar. Trust*,
    586 F. Supp. 930 (S.D.N.Y. 1984)………………………………...………………15

*Turner v. J.V.D.B. & Assocs., Inc.*,
    330 F.3d 991 (7th Cir. 2003)………….......………………………...……..17

*Tuttle v. Equifax Check*,
    190 F.3d 9 (2d Cir. 1999)……….......………………………………………17

*Vincent v. Money Store*,
    736 F.3d 88 (2d Cir. 2013)……………......……………………………22,23

*Weiss v. Zwicker & Associates.*,
    664 F. Supp.2d 214 (E.D.N.Y. 2009)…………......…………….…………....……18,19

*West v. Costen*,
    558 F. Supp. 564 (W.D. Va. 1983)……………………………...……………17

**Federal Statutes:**

Fed. R. Civ. P. 12(b)(6))……..........…..........……………………………………...4,22

Fed. R. Civ. P. 12(c)………………………..........…………………….……………..4

Fed. R. Civ. P. 15(c)…………………………..........…………………….…..…………...15

15 U.S.C. §§ 1692, *et seq*……………………..........………………………*passim*

15 U.S.C. § 1692a(4)……………………..........…………………….…………20

15 U.S.C. § 1692e(2)(A)…..……………………….........………………...............8,9,10

15 U.S.C. § 1692e(3)…………………..........…………………….………...............10,12,14

15 U.S.C. § 1692e(5)…………………..........…………………….….…….................13,14

15 U.S.C. § 1692e(10)…………………..........…………………….………14

15 U.S.C. § 1692f…………………..........…………………….………….............15, 17

15 U.S.C. § 1692f(1)…………………..........…………………….………16

15 U.S.C. § 1692g…………………..........…………………….……...............18,19

15 USC § 1692g(a)(1)-(3)…………………..........……………...……………18,19,21

15 U.S.C. § 1692j…………………..........…………………….……………22,23

15 U.S.C. § 1692k(d)…………………..........…………………….…..……..............15

18 U.S.C. §§1961-1968…………………..........……………...……………………..1,2

**State Law:**

N.Y. Banking Law § 14-a(1)…………..………..........…………………….…17

N.Y. Gen. Business Law § 349………………..……..........………………….23

N.Y. Gen. Oblig. Law § 5-501………………..……..........………………….1,2

N.Y. Gen. Oblig. Law § 5-501(1)…………………..……..........……………..…17

N.Y. Gen. Oblig. Law § 5-505…………………..……...........…………………….24

New York General Obligations Law § 5-511…………………..……...........……………1,2

New York General Obligations Law § 5-513…………………..……...........……………1,2

## I. PRELIMINARY STATEMENT

Plaintiff, ANNMARIE AVILA ("Plaintiff" or "AVILA"), on behalf of herself and all others similarly situated, respectfully submits this Memorandum of Law in Opposition to the Fed> R. Civ. P. 12(b)(6) Motion to Dismiss filed by Defendants, RIEXINGER & ASSOCIATES, LLC ("RIEXINGER LLC"), STEPHEN P. RIEXINGER ("RIEXINGER"), and CROWN ASSET MANAGEMENT, LLC ("CROWN ASSET") (collectively "Defendants").

## II. INTRODUCTION

This case concerns a debt collection agency, CROWN ASSET, who along with its common-ownership in a debt collection company/law firm, RIEXINGER LLC, and their joint owner, RIEXINGER, willfully, deliberately, and intentionally implemented collection policies and practices that violate -- with impunity -- the federal Fair Debt Collection Practices Act, 15 U.S.C. §§1692, *et seq.* ("FDCPA"), New York General Obligations Law § 5-501, New York General Obligations Law § 5-511, New York General Obligations Law § 5-513, New York Penal Law § 190.40 and 190.42, and, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. Defendants' illegal collection practices are designed to maximize their profits at the expense and disadvantage of New York consumers, as well as other debt collection companies who try to abide by these laws.

As set forth in Plaintiff's First Amended Complaint, Defendants violated FDCPA by, *inter alia*, sending consumers written communications which: (i) make false representations or implications that an attorney is, *and at some point will be*, meaningfully involved in the process of collecting debts from consumers; (ii) fail to identify the creditor of the alleged debt; (iii) fail to state the amount of the debt; (iv) seeks to collect a usurious amounts of interest; (v) misstates the consumer's 30-day dispute and validation rights; and (vi) falsely represent REIXINGER LLC and RIEXINGER is participating in the collection of a debt allegedly owed to CROWN ASSET, when

-1-

in fact they are not so participating. [Doc. 23].

Additionally, Plaintiff's Amended Complaint alleges Defendants willfully, deliberately, and intentionally implemented collection policies and practices that violate the New York General Obligations Law § 5-501, which forbids usurious contracts; New York General Obligations Law § 5-511, which declares usurious contracts to be void; New York General Obligations Law § 5-513, which requires the disgorgement of all usurious interest collected; New York Penal Law § 190.40 and 190.42, which prohibits the charging of usurious interest, *i.e.* - interest in excess of 25%; and, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). [Doc. 23]. Indeed, Plaintiff alleged Defendants willfully, deliberately, and intentionally implemented FDCPA violative collection practices in her initial Complaint, amending her Complaint to include the newly discovered information regarding Defendants' mischaracterization of the debt and usury lending practices. As shown herein, Plaintiff has sufficiently alleged numerous facts upon which relief may be granted under both state and federal law.

Relying on untenable interpretations of statutes designed to protect consumers and law-abiding collectors, and in contradiction to the overwhelming majority of federal court decisions, Defendant argues that Plaintiff's Amended Complaint fails to state any claim against Defendants and, therefore, must be dismissed as a matter of law.

### III. PROCEDURAL HISTORY

On July 31, 2013, Plaintiff filed a putative class action alleging Defendants and violated the FDCPA by *inter alia*, sending consumers written communications that make false representations or implications that an attorney is meaningfully involved in the process of sending those communications. [Doc. 1].

After multiple extensions [Doc. 6], Defendants answered the Complaint on September 27, 2013, denying any FDCPA violations or any other violations of law. [Doc. 10]. In their Answer,

-2-

Defendants **_denied_** the majority of Plaintiff's factual allegations on the basis they lacked any

**"knowledge or information sufficient to form a belief as to the truth of the allegations"**

including, but not limited to, whether:

(i)    Plaintiff incurred a default debt to Wells Fargo and that Plaintiff is a consumer [Doc. 10, ¶¶21-25];

(ii)   Defendants are debt collectors [Doc. 23, ¶¶32, 35, & 39];

(iii)  The creditor of the Wells Fargo Obligation that Defendants sought to collect from Plaintiff assigned, placed, transferred, or sold the debt to CROWN ASSET for collection [Doc. 10, ¶26];

(iv)   Defendants' attempt to vitiate their culpability by stating in the 8/2/12 Letter with the statement that, "at this time no attorney with this firm has reviewed the particular circumstances of your account," however, as would the least sophisticated consumer, Plaintiff understood the 8/2/12 Letter to mean an attorney had, at the least, done a cursory review of Plaintiff's file and had determined legal action against Plaintiff was merited [Doc. 10, ¶55];

(v)    The collection letter Defendants sent to Plaintiff is actually a computer-generated, mass-produced, letter that is sent *en masse* to consumers at-large without any meaningful attorney review or involvement and with no intention of following through on the threats of legal action contained therein [Doc. 10, ¶61]; and

(vi)   Defendants are mere alter egos of one another who share, *inter alia*, the same resources, equipment, office space, and personnel [Doc. 10, ¶62].

Defendants also flatly denied that CROWN ASSET ever hires RIEXINGER LLC and

RIEXINGER to file lawsuits against consumers in the State of New York in an effort to collect

money. [Doc. 10, ¶30]. Defendants also <u>admitted</u> that: RIEXINGER has an ownership interest in,

and is the Chief Legal Officer for, CROWN ASSET [Doc. 10, ¶31]; that neither RIEXINGER

LLC nor RIEXINGER are licensed to practice law in the State of New York and that they **_never_**

pursue legal action concerning the debts it seeks to collect from consumers in the State of New

York. [Doc. 10, ¶¶40-41].

On October 28, 2013, Defendants served their Fed. R. Civ. P. 26(a) Initial Disclosures

which, *for the first time*, revealed that CROWN ASSET is not the placement owner of the debt

-3-

Defendants sought to collect from Plaintiff, and which further revealed that the "Current Balance" listed on the collection letter they mailed Plaintiff contained a usurious amount of interest (i.e., in excess of 500% annually) that was accruing on a daily basis. Thereafter, Plaintiff served written discovery and sought to take depositions which were specifically aimed at revealing the facts and substance underpinning Defendants' admissions and denials set forth in their Answer and Initial Disclosures.

In response, Defendants requested a pre-motion conference for leave to file a Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings based on their contention the issue in this matter is whether or not Defendants were acting as debt collectors in sending correspondence to Plaintiff and class members, and then sought to stay all discovery. [Docs. 17 & 21]. On February 19, 2014, the Court held a pre-motion conference with the Parties, at which time the Court granted Plaintiff leave to file her Amended Complaint to alleged additional facts and causes of action, and granted Defendants leave to file a Motion to Dismiss should they desire to do so after reviewing the amended complaint. [Doc. 22].

On March 3, 2014, Plaintiff filed her Amended Complaint. [Doc. 23]. Thereafter, the Parties conferred on a briefing schedule, which was subsequently amended, and Defendants responded with the current Rule 12(b)(6) Motion to Dismiss, claiming Plaintiff failed to state any claims upon which relief may be granted. Plaintiff files this memorandum in response.

## IV. RELEVANT FACTS CONTAINED IN THE FIRST AMENDED COMPLAINT

Defendants' Motion to Dismiss contains a "Statement of Facts," which emphasizes Plaintiff's Amended Complaint contains 232 paragraphs; however, Defendants' brief declines to discuss any of those facts and, instead, merely recites a portion of Defendants' collection letter and states generally that Plaintiff has not alleged making any payments to Defendants, suffered any damages, and does not deny her alleged debt was in default. [*Def. Brief* at pp. 2-3].

-4-

As a threshold matter, Plaintiff has alleged all facts necessary to entitle her to standing under the FDCPA. Specifically, Plaintiff is a consumer, who is alleged to owe a defaulted consumer debt, which Defendants, each of whom is a debt collector, sought to collect from her by sending Plaintiff a collection letter via U.S. Mail. [Doc. 23, ¶¶27-54].

The creditor of Plaintiff's alleged debt ("Wells Fargo Obligation") is unknown; however, the creditor of that debt transferred it to CROWN ASSET for collection. [Doc. 23, ¶35]. CROWN ASSET is a debt collection company, which is under common-ownership and control by RIEXINGER, and which Defendants at all times concealed from Plaintiff and other similarly situated consumers. [*Id.* at ¶38]. CROWN ASSET, RIEXINGER LLC, and RIEXINGER are alter egos of one another who share, *inter alia*, the same resources, equipment, mailing address, office space, and personnel. [*Id.* at ¶115].

In an attempt to collect the Wells Fargo Obligation, Defendants sent Plaintiff a letter dated August 2, 2012 using RIEXINGER's law firm letterhead that prominently states, "Attorneys at Law," and which bears RIEXINGER's facsimile signature at the bottom as "Attorney at Law" ("8/2/12 Letter"). [*Id.* at ¶53, Exh. A]. The mailing address listed on the 8/2/12 Letter's law firm letterhead of belongs to CROWN ASSET, who was responsible for the printing and mailing of that letter to Plaintiff. [*Id.* at ¶117]. CROWN ASSET pays RIEXINGER LLC and RIEXINGER a modest fee to rent their law firm letterhead in order to send Plaintiff and other similarly situated consumers mass-produced, computer generated collection letters. [*Id.* at ¶¶115-121].

Plaintiff presumed, as would the "least sophisticated consumer," that the 8/2/12 Letter was in fact the work product of a licensed attorney as it stated: (i) "The firm of Riexinger & Associates LLC is a law firm ***representing*** CROWN ASSET MANAGEMENT, LLC the current creditor….the above-referenced matter has been placed with us for collection and ***such action as necessary to protect our client***" (Emphasis added); (ii) "if you fail to contact this office, our client

-5-

may consider ***additional remedies to recover*** the balance due." (Emphasis added); states at the top "Attorneys at Law;" and (iii) bears RIEXINGER's facsimile signature as "Attorney at Law." [*Id.* at ¶¶55-58].

There are no associates employed by RIEXINGER LLC, and neither that entity nor RIEXINGER are admitted to practice in New York, and none of these Defendants ever pursue, or authorize, legal action concerning the debts they seek to collect from New York residents such as Plaintiff. [*Id.* at ¶¶50-52, 58]. In fact, RIEXINGER LLC and RIEXINGER act ***solely*** as a debt collector and ***never*** as an attorney when sending collection letters to Plaintiff and other similarly situated New York consumers. [*Id.* at ¶¶50-58, 68; Doc. 10, ¶¶40-41].

After receiving the 8/2/12 Letter, Plaintiff reasonably inferred CROWN ASSET was proceeding aggressively against Plaintiff in collecting the Wells Fargo Obligation as CROWN ASSET had incurred the expense to hire a law whose named partner, RIEXINGER, had taken the time to personally write Plaintiff a letter that threatens "such action as necessary" and pursuing "additional remedies" and had then signed the letter as an "Attorney at Law." [*Id.* at ¶¶58].

The 8/2/12 Letters goes to great lengths to conceal the fact that neither RIEXINGER LLC nor RIEXINGER are licensed to practice law in New York, they never act in a legal capacity when collecting debts, and have no intention of ever pursuing "additional remedies" of any kind against Plaintiff or other New York consumers. [*Id.* at ¶59]. As Plaintiff understood the 8/2/12 Letter the debt collection process has entered into a phase where CROWN ASSET through its attorneys, will begin to use procedures established by law and known to attorneys to collect the Wells Fargo Obligation (i.e., filing a lawsuit and obtaining judgment) and the only way to avoid this was to call the Defendants or pay them. [*Id.* at ¶¶60-66].

No attorney was, or ever would be, involved in collecting Plaintiff's debt, and the 8/2/12 Letter failed to make clear to that RIEXINGER LLC and RIEXINGER were acting solely as a

-6-

debt collector and *would never* act in the capacity of an attorney in sending the letters. [*Id.* at ¶¶67-72]. The sole purpose of the 8/2/12 Letter was to scare Plaintiff and similarly situated New York consumers into paying debts they may not even owe. [*Id.* at ¶¶73-78].

CROWN ASSET is not the owner of the Wells Fargo Obligation as set forth on the 8/2/12 Letter, which Plaintiff had no ability to discover until October 29, 2013, when Defendants disclosed it in their initial disclosures. [*Id.* at ¶¶92-96]. Defendants also added undisclosed usurious interest (in excess of 500% interest per annum) to the principal balance of the Wells Fargo Obligation and then made further efforts to collect the increased amounts from Plaintiff, which the 8/2/12 Letter failed to disclose and failed to disclose this interest would continue to accrue on a daily basis. [*Id.* at ¶¶98-114]. Each of the Defendants were engaged in a scheme or business of collecting usurious amounts of interest from Plaintiff and other similarly situated consumers in the State of New York at a rate exceeding 32% per annum or the equivalent rate for a longer or shorter period. [*Id.* at ¶¶41,42, and 79-90].

## V. APPLICABLE LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "In addressing the sufficiency of a complaint [the court] accept[s] as true all factual allegations and draw from them all reasonable inferences; but [is] are not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir.2013). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Indeed, "[t]he plausibility standard is not akin to a probability requirement...." *Id.* (internal quotation marks omitted). However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and

-7-

that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (internal quotation marks omitted). Here, Plaintiff has pled facts in explicit detail, alleging specific violations of law based on evidence attached to the Complaint, i.e. the violative letters to be judged by the less sophisticated consumer standard, and making the facts pled sufficient to survived Defendants' Motion to Dismiss irrespective of Defendants' claims to the contrary.

## VI. ARGUMENT

Congress enacted the FDCPA to protect consumers from abusive, threatening, deceitful, and otherwise unscrupulous debt collection practices. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). The FDCPA is a strict liability statute, and thus "a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp. 2d 336, 339 (E.D.N.Y. 2002) (*quoting Russell*, 74 F.3d at 36). The FDCPA enlists the efforts of sophisticated consumers as private attorneys general to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others. *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008). "Congress intended the Act to be enforced primarily by consumers...." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them...." *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 27 (2d Cir. 1989).

### A.   Defendant's Letter Violates § 1692e(2)(A) of The FDCPA Because It Makes False Representations of the Character, Amount, or Legal Status of a Debt.

The FDCPA prohibits the false representation of the character, amount, or legal status of any debt. *S e e*  15 U.S.C.  §  1692e(2)(A). Defendants cite *Pifko  v.  CCB  Credit  Services,  Inc.,*

No. 09-3057, 2010 WL 2771832, at *5 (E.D.N.Y. July 7, 2010) as supporting their argument that Plaintiff's § 1692e(2)(A) claim fails because a collector letter need not indicate that a consumer's debt may increase due to interest. *See* Motion, ¶ i, p. 5. However, Defendants fail to acknowledge the negative treatment *Pifko* subsequently received in a published Second Circuit decision wherein the court held "a validation notice fails to satisfy the statute unless it states the total amount due as of the date the letter is sent ***and also discloses whether the amount of the debt will increase due to interest.*"** *Jones v. Midland Funding, LLC,* 775 F.Supp.2d 393, (D. Conn. Dec. 16. 2010)*(emphasis added)*.

In *Jones* the Second Circuit specifically declined to follow *Pifko* noting that it was otherwise problematic because the least sophisticated consumer, although perhaps aware that debt typically accrues interest, might well be uncertain as to the amount of the debt, and cited a long string of cases in congruency with the principle that the letter must disclose whether the amount of the debt will increase due to interest. *Id. citing Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872 (7th Cir. 2000); *Dragon v. I.C. System, Inc.*, 483 F.Supp.2d at 198, 201–03 (D.Conn. 2007); *Smith v. Lyons, Doughty & Veldhuius, P.C.,* No. 07–5139, 2008 WL 2885887, at *6 (D.N.J. July 23, 2008); *Jackson v. Aman Collection Serv.,* No. IP 01–0100–C–T/K, 2001 WL 1708829, at *3 (S.D.Ind. Dec. 14, 2001).

The Second Circuit revisited *Pifko* two years later, reiterating its 2010 holding that a validation notice must disclose whether the amount of the debt will increase due to interest, while noting since its 2010 ruling, "several district courts have issued rulings on whether a validation notice must disclose interest ... [t]hree opinions—one from within the Second Circuit, two from without—fall into the line of cases [the *Jones* court] endorsed." *Jones v. Midland,* WL 1204716 (D.Conn. April 11, 2012). Indeed, held the court, "if the consumer does not know the amount of his debt, he cannot decide whether the settlement offer is a good one." *Id.* at 2. This is precisely

-9-

the sort of situation the FDCPA seeks to avoid by protecting the least sophisticated consumer from

a debt collector. Defendants' 8/2/12 Letter violates § 1692e(2)(A) of the FDCPA and cannot be

dismissed simply because Defendants found one unreported decision supporting their position.

**B.    Defendants' Letter Violates § 1692e(3) of the FDCPA Because It Makes False Representations That an Attorney Meaningfully Reviewed the Letter**

15 U.S.C. §1692e(3) prohibits "the false representation or implication that any individual

is an attorney or that any communication is from an attorney" in the collection of a debt. *See Greco*

*v. Trauner, Cohen & Thomas L.L.P.,* 412 F.3d 360, 364 (2d Cir. 2005). "Abuses by attorney

debt collectors are more egregious than those of lay collectors because a consumer reacts with far

more duress to an attorney's improper threat of legal action than to a debt collection agency

committing the same practice." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989). "A debt

collection letter on an attorney's letterhead conveys authority and credibility." *Id.* at 570. Indeed,

as explained by the Seventh Circuit held in *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996):

> An unsophisticated consumer, getting a letter from an "attorney," knows the price
> of poker has just gone up. And that clearly is the reason why the dunning campaign
> escalates from the collection agency, which might not strike fear in the heart of the
> consumer, to the attorney, who is better positioned to get the debtor's knees
> knocking.
>
> A letter from an attorney implies that a real lawyer, acting like a lawyer usually
> acts, directly controlled or supervised the process through which the letter was sent.
> That's the essence of the connotation that accompanies the title of "attorney." A
> debt collection letter on an attorney's letterhead conveys authority. Consumers are
> inclined to more quickly react to an attorney's threat than to one coming from a
> debt collection agency. It is reasonable to believe that a dunning letter from an
> attorney threatening legal action will be more effective in collecting a debt than a
> letter from a collection agency. The attorney letter implies that the attorney has
> reached a considered, professional judgment that the debtor is delinquent and is a
> candidate for legal action. And the letter also implies that the attorney has some
> personal involvement in the decision to send the letter. Thus, if a debt collector
> (attorney or otherwise) wants to take advantage of the special connotation of the
> word "attorney" in the minds of delinquent consumer debtors to better effect
> collection of the debt, the debt collector should at least ensure that an attorney has
> become professionally involved in the debtor's file. Any other result would

-10-

> sanction the wholesale licensing of an attorney's name for commercial purposes, in derogation of professional standards[.]

*Id*. at 229. The Second Circuit has held in *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) and *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292 (2d Cir. 2003), that the use of an attorney's letterhead and his facsimile signature on collection letters is sufficient to give consumers the false impression that the letters are communications from an attorney in violation of §1692e(3). *Cloman,* 988 F.2d at 1320, *Miller* at 301.

While *Greco* did hold that a disclaimer regarding the attorney's non-participation in the collection of a debt could alleviate a debt collector's §1692e(3) liability, *Greco* also held that the key issue is whether the least sophisticated consumer would be confused regarding attorney involvement. *Greco*, 412 F.3d at 364. Other courts have addressed the issue of consumer confusion touched upon by the *Greco* court, holding that where debt collector "attorneys" include a *Greco* disclaimer wherein they simply add that an attorney has <u>not</u> made a meaningful review of a letter, but have sent the letter on law firm letterhead and it is signed by an attorney, the debt collector does not insulate itself from the FDCPA's prohibition against "false, deceptive, or misleading" communications. *See e.g. Gonzalez v. Kay,* 577 F.3d 600 (5th Cir. 2009); *Lesher v. Mitchell N. Kay*, 650 F.3d 993 (3d Cir. 2011).

Just like the defendant the defendant Kay Law Firm, Riexinger LLC is not actually a law firm at all, but a debt collection agency that uses the imprimatur of a law firm to intimidate debtors into paying their debts. *Gonzalez, supra* at 602-03. Indeed, simply including a disclaimer on a letter sent on attorney letterhead and which includes an attorney signature block on the letter mailed to plaintiff falsely implies that an attorney, acting as an attorney, is – or <u>at some future point will be</u> – involved in collecting consumer's debt, leading a least sophisticated consumer to reasonably believe that the law firm/attorney has determined plaintiff is a candidate for legal

-11-

action. *Lesher*, 650 F.3d at 999. A disclaimer included in such a letters may vitiate an attorney's culpability in sending such a letter, <u>if</u> the letter makes it clear to the least sophisticated consumer that the law firm/attorney are acting <u>solely as a debt collector</u> and not in any legal capacity in sending the letters. *Id.* A disclaimer must explain to the least sophisticated consumer that "lawyers may also be debt collectors and that the lawyer is operating ***only*** as a debt collector at that time." *Lesher*, 650 F.3d at 1000, (citing *Avila v. Rubin,* 84 F.3d 222 (7th Cir.1996) (emphasis added).

Defendants' letter does not make it clear that Reixinger and the law firm Reixinger LLC were acting purely as debt collectors and, as they have admitted, they will never act in the capacity of an attorney with respect to collecting these debts. As such, Defendants violated the FDCPA and all claims alleged by Plaintiff are viable. Further, Defendants eradicate the clarification effect of the disclaimer by including additional language that further confuses the consumer, stating in their letter, "at this time no attorney with this firm has personally reviewed the particular circumstances of your account . ***However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.***" (emphasis added). [Doc. 1, Exhibit A]. Rather than explain to the least sophisticated consumer that the Defendants are ***only*** operating as debt collectors and not as attorneys, the letter and its using terms such as "client" heightens the consumer's concern that the Defendants are acting as attorneys who are ready to bring "additional remedies" on "our client[s]" behalf should Plaintiff fail to contact them. [Doc. 1, Exh. A]. When letters with a *Greco* disclaimer contain language that overshadows or contradicts other language in the communication, it violates the FDCPA. *Savino v. Computer Credit*, 164 F.3d 81 (2d Cir. 1998); *Lesher*, 650 F.3d 993; *Avila*, 84 F.3d 222

Defendants' letter overshadows its *Greco* disclaimer in that stating below the signature that the Defendants are "acting as a debt collector pursuant to §1692" is meaningless to a least sophisticated consumer when the consumer, not familiar with legal citations, has already been

assured in the body of the letter that the "law firm representing" was expressly hired by their "client," to pursue "such action as necessary to protect [their] client" including pursuing "additional remedies," which Plaintiff understood to mean legal remedies, and which is precisely what one expects of a law firm – not a debt collector.

      In sum, Defendants' letter falsely represented that it was from an attorney acting as an attorney, intending to scare the consumer, and thereby giving the debt collector an unfair advantage over non-attorney debt collectors, a tactic that Congress expressly sought to remedy when it enacted the FDCPA. *See* 15 U.S.C. §1692(e)(3). A disclaimer **similar** to the disclaimer found in *Greco*, surrounded by other statements indicating meaningful attorney involvement does not negate Defendants' § 1692(e)(3) culpability.

### C.    Defendant's Letter Violates § 1692e(5) Of The FDCPA Because It Fails To Take Action That Cannot Be Legally Taken Or That Is Not Intended To Be Taken.

      15 U.S.C. §1692e(5) prohibits "threat[ing] to take any legal action that cannot legally be taken or is not intended to be taken." Case law holds that a communication violates §1692e(5) when "as a whole," it leaves the unsophisticated reader with the impression that "some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment." *Pipiles*, 886 F.2d at 25. Here, as already discussed, Defendants' letter leaves the least sophisticated consumer with the impression that failure to act immediately will result in a Riexinger attorney proceeding with legal action. Indeed, Defendants' letter informs the consumer that Riexinger is a "law firm representing" their "client," who has placed the consumer's account with Riexinger for "such action as necessary to protect [their] client" including pursuing "additional remedies" if the consumer does not contact them.

      As understood by the least sophisticated, the Defendants are acting as attorneys hired to take legal action against Plaintiff. Despite this threat, Defendants have admitted to this Court

that they never intended to take legal action, and indeed, Defendants rest their entire Motion to Dismiss on the overarching claim that they never intended to take legal action against Plaintiff or any consumer. In other words, Defendants' admit that they violated §1692e(3) in that, despite sending letters that imply attorney involvement and attorney action, they never intended to take any legal action. As such, a § 1692e(5) cause of action against Defendants is proper.

Additionally, as discussed *infra*, Defendants' sought to collect an usurious amount of interest, which they are not legally permitted to collect in the State of New York. Thus, Defendants' 8/2/12 Letter also violates § 1692e(5) by threatening to take action (i.e., "pursue additional remedies" to collect usurious interest ) that they are not legally entitled to take.

**D.    Defendant's Letter Violates § 1692e(10) FDCPA Because Defendants' Letter is False, Deceptive and Misleading**

15 U.S.C. §1692e(10) prohibits the use of any false, deceptive or misleading statements in an attempt to collect a debt. As already discussed herein, Defendants sent letters to consumers that would cause the least sophisticated consumer to believe an attorney, acting as an attorney, was meaningfully involved – or would become involved in the future – in the process of sending letters to consumers to collect debts. Furthermore, leading least sophisticated consumers to believe Defendants' "client" has authorized them to "pursue additional remedies" to collect an alleged debt, which Defendants now admit they never intended to take, is by its very nature false, deceptive, and misleading collection conduct that violates the FDCPA. A *Greco* style disclaimer that is overshadowed by the content of the letter as a whole, does not change the false, deceptive, and misleading nature of the letter. As such, a § 1692(10) cause of action against Defendants is proper.

-14-

E.   **Defendant's § 1692f of the FDCPA Because Defendants Are Attempting to Collect Interest Not Expressly Authorized by Any Agreement Between Plaintiff and Defendants and the Amount of Interest Added is Usury.**

i.   **Plaintiff's §1692f Claim is Timely**

As an initial matter, Defendants attempt to shirk their liability by claiming that a §1692 cause of action is time barred because of § 1692k(d)'s one year statute of limitations. While § 1692k(d) does include a one year statute of limitations, the filing of Plaintiff's complaint put Defendants on notice of litigation related to its FDCPA violative communication sent to Plaintiff and similarly situated consumers. Indeed, when considering the statute of limitations, as the Court recognized in permitting Plaintiff leave to amend, an amended complaint relates back to the date of filing the first complaint because "the claim … asserted in the amended [complaint] arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c). Plaintiff did not assert the §1692f claim in her initial complaint; however, "[t]he rationale underlying the relation-back doctrine is that one who has been given adequate notice of litigation concerning a given transaction or occurrence has been provided with all the protection that statutes of limitations are designed to afford." *In re Chaus Securities Litigation*, 801 F.Supp. 1257, 1264 (S.D.N.Y.1992). Importantly, in *Chaus* the court held that the standard for determining whether a claim should relate back is based on whether adequate notice of the "matters raised in the amended pleading has been given to the opposing party 'by the general fact situation alleged in the original pleading.'" *In re Chaus Securities Litigation*; 801 F.Supp. 1257, 1264 (S.D.N.Y. 1992) (*citing Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. 248, 255 (S.D.N.Y.), aff'd, 842 F.2d 612 (2d Cir.), *cert. denied sub. nom., O'Reilly v. New York Times Co.*, 488 U.S. 856, 109 S.Ct. 145 (1988) (citation omitted); *see also Tri–Ex Enterprises v. Morgan Guar. Trust*, 586 F.Supp. 930 (S.D.N.Y. 1984).). Accordingly, the relation back doctrine is properly applied only where the claims asserted arose out of the conduct, transaction,

or occurrence set forth or attempted to be set forth in the original pleading. *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir.), *cert. denied*, 414 U.S. 872 (1973). Here, Plaintiff's claims asserted did arise out of the conduct and occurrence set forth in the original pleading and, as such, the relation back doctrine applies.

In her initial complaint, Plaintiff alleged FDCPA violations by Defendants in their attempt to collect a debt. Plaintiff's new claim is based on the same collection letter appended to her initial complaint. In so doing, Defendants were given adequate notice of litigation concerning a given transaction or occurrence – Defendants knew they were being sued for FDCPA violations based on the face of their 8/2/12 Letter. The fact that Plaintiff only learned later through discovery that the 8/2/12 Letter contained a dollar amount determined through unauthorized charges and usurious rates of interest, does not shield Defendants from liability for all violations contained in the letter. They were on notice that the 8/2/12 Letter itself was the subject of a FDCPA class action, later learned facts, which Defendants concealed, regarding the same letter that give rise to additional FDCPA violations, are properly related back to the initial complaint.

**ii.** **Defendants Are Attempting To Collect Interest, Costs and Fees Not Expressly Authorized in the Agreement Creating the Debt**

15 U.S.C 1692f(1) states that the collection of interest, service fees, collection cost or other expenses to the original debt is permitted when "*such amount is expressly authorized by the agreement creating the debt or permitted by law*" (emphasis added); *See also Shapiro v. Riddle & Associates, P.C.*, 351 F.3d 63 (2d Cir. 2003). As such, adding any such fees and expenses and incorporating that amount into a collection letter violates the FDCPA unless the contract createing the debt specifies what the interest rate, late fees, services fees, or other charges are going to be and must be signed by the consumer before a creditor can legally add them on to the debt. *Id.* Defendants have produced no such agreement because no such agreement exists.

-16-

### iii.   Defendants are Attempting to Collect a Usurious Rate of Interest

Even if Defendants had produced a contract that explicitly states Plaintiff is subject to additional fees and costs, including a rate of interest in excess of, should the alleged debt go to a debt collector, a contract stating such interest rates will be added, does not make them collectible. A debt collector may not collect an additional amount if either (1) the debt agreement fails to explicitly authorize the charge; or (2) the charge is prohibited by law." *Turner v. J.V.D.B. & Assocs., Inc.,* 330 F.3d 991, 996 (7th Cir. 2003). "Under this provision, it is unconscionable for a debt collector to collect any amount in excess of the principal amount of a loan, *including collection charges,* unless these charges are authorized expressly by the terms of the agreement creating or evidencing the debt or unless the charges are authorized explicitly by applicable state law." *Patzka v. Viterbo College,* 917 F. Supp. 654, 658 (W.D. Wisc. 1996) (emphasis added). *See also, West v. Costen,* 558 F. Supp. 564 (W.D.Va. 1983); *Tuttle v. Equifax Check,* 190 F.3d 9, 13 (2d Cir. 1999); *Pollice v. National Tax Funding L.P.,* 25 F.3d 379, 408 (3d Cir. 2000).

In New York State, the rate of interest upon the loan or forbearance of any money, goods, or things in action may not exceed 16% per year. N.Y. Gen. Oblig. Law § 5-501(1); N.Y. Banking Law § 14-a(1). In other words, in New York, charging interest of more than 16% per year is civil usury. Here, Defendants charged and attempted to collect interest at a rate far in excess of the 16% rate set by New York's usury laws (i.e., they attempted to collect in excess of 500% per annum) through, *inter alia*, communications such as the 8/2/12 Letter. The interest rate charged is usurious and, therefore, prohibited by New York law. Accordingly, Defendants letter violates 15 USC § 1692f of the FDCPA.

**F.  Defendants' Letter Violates § 1692g of the FDCPA Because It Fails to Disclose the Amount of the Debt, It Fails to Name the Original Creditor And Impermissibly Advises The Consumer That The Debt Will Be Assumed To Be Valid By The Creditor If The Consumer Fails To Timely Dispute The Alleged Debt**

Section 1692g of the FDCPA establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors like Defendants for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights in their initial communication with the consumer. *Goldman v. Cohen*, 445 F.3d 152 (2d Cir. 2006); *McStay v. I.C. System, Inc.*, 308 F.3d 188 (2d Cir. 2002). Specifically, the FDCPA requires that the debt collector send consumer a written notice containing, *inter alia,* to (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, and (3) a statement that notifies the consumer that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector. *Id.;* 15 USC § 1692g(a)(1)-(3).

**i.  Defendants Fail to Disclose the Amount of the Debt**

Defendants' 8/2/12 Letter violated the FDCPA requirement to correctly state the amount of the debt by failing to disclose that the amount of debt would increase due to interest; without knowing the interest rate information, the least sophisticated consumer could be left uncertain as to the amount of the debt. Again, Defendants rely on *Pifko* to support their assertion they were not required to disclose the rate of interest and that fact that interest was being charged. Defendants also point to *Weiss v. Zwicker & Associates.*, 664 F.Supp.2d 214, 217 (E.D.N.Y. 2009) for the proposition that "even the most unsophisticated consumer would understand that credit card debt accrues interest." However, citing both *Pifko* and *Weiss,* the Second Circuit and other courts have held that the failure to disclose that interest is accruing and the amount of interest violates the FDCPA. *Jones v. Midland Funding, LLC*, 755 F.Supp.2d 393.

-18-

*Jones* noted that "[t]he requirement that a validation notice correctly state the amount of the debt has produced conflicting judicial opinions....[s]ome courts have held [] a validation notice fails to satisfy the statute unless it states the total amount due as of the date the letter is sent and also discloses whether the amount of the debt will increase due to interest." *citing Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872 (7th Cir.2000); *Dragon* 483 F.Supp.2d at 201–03; *Smith v. Lyons, Doughty & Veldhuius, P.C.,* No. 07–5139, 2008 WL 2885887, at *6 (D.N.J. July 23, 2008); *Jackson v. Aman Collection Serv.,* No. IP 01–0100–C–T/K, 2001 WL 1708829, at *3 (S.D.Ind. Dec. 14, 2001). *Jones* also recognized the three cases that held that a validation notice satisfies the statute if it states the total amount of the debt (including interest and any other charges) as of the date the letter is sent. *Jones*, 755 F.Supp.2d 393 *citing Adlam v. FMS,* No. 09 Civ. 9129(SAS), 2010 WL 1328958, at *3 (S.D.N.Y. April 5, 2010); *Pifko,* 2010 WL 2771832, at *3–4 and *Weiss*, 664 F.Supp.2d 214, 217.

In contemplating the conflicting case law, and declining to follow the holdings in *Pifko* and *Weiss*, the Second Circuit agreed with the *Miller* line of cases that hold when a debt is accruing interest, "a validation notice fails to correctly state the amount of the debt as required by §1692g unless it discloses the fact that interest is accruing and informs the consumer of the applicable interest rate."). *Jones* also noted that a debt collector could easily comply with §1692g requirements and avoid liability under the FDCPA by using the following "safe harbor language: as of the date of this letter, you owe $—— [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection…" *Jones*, 755 F.Supp.2d at 398. Here, the Defendants chose not to inform the consumer that interest was accruing, even after being given explicit language by the Second Circuit which

-19-

found *Pifko* and *Weiss* lacking. Rather than assure FDCPA compliance, Defendants chose to continue to leave the least sophisticated consumer confused an uninformed.

### ii.     Defendants Fail to Identify the Original Creditor

In their motion to dismiss, Defendants claim they comply with §1692g's requirement that their communications to consumers by identifying Crown Asset as the current creditor. However, in so arguing, Defendants blatantly ignore the definition of a creditor. Section § 1692a(4) of the FDCPA clearly states "[t]he term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, ***but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another***." (emphasis added). The Defendants' also blatantly ignore the well-pleaded facts in Plaintiff's Amended Complaint that Crown Asset is: a debt collector and *not* a creditor [Doc. 23, ¶¶35-40]; and (ii) the creditor of the Wells Fargo Obligation is unknown [Doc. 23, ¶35]. Crown Asset does not extend credit to consumers creating a debt. [Doc. 23, ¶36]. Moreover, Defendants blatantly ignore their own prior Answer to Plaintiff's initial complaint in which they deny that the Wells Fargo Obligation assigned, placed, transferred, or sold the debt to Crown Asset for collection [Doc. 10, ¶26]. Accordingly, as alleged by Plaintiff and confirmed by Defendants in their own Answer [Doc. 10] and Rule 26 Disclosures, Crown Asset is not the "creditor" of Plaintiff's alleged debt and, therefore, the 8/2/12 Letter did not disclose the name of the creditor in violation of §1692g.

### iii.     Defendants Falsely State the Consumer's Rights Regarding Debt Validation

Section §1692g(a)(3) of the FDCPA clearly states that "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid ***by the debt collector***." (emphasis

added). Here, the Defendants' letter states that, if not disputed by the consumer, "the debt will be assumed to be valid *__by the creditor__* and by this Firm." (Emphasis added).

"By including the term 'by the debt collector,' § 1692g(a)(3) expressly intended the notice to convey the specific validation limitation to the consumer....In other words, the statute intended the consumer to receive the message that the debt would be assumed valid by only the debt collector and only for collection purposes." *Orr v. Westport Recovery Corp.*, 941 F. Supp. 2d 1377, 1381 (N.D. Ga. 2013); *accord Iyamu v. Clarfield, Okon, Salomone & Pincus, P.L.*, 950 F. Supp. 2d 1271, 1274 (S.D.Fla. 2013) (collecting cases ommitted). "The statutorily required validation notice is intended to convey to the consumer that failure to dispute the debt permits the debt collector to proceed for collection purposes on the 'temporary fiction' that the debt is valid[, that f]ailure to dispute a debt has no legal effect on a debtor's rights . . . [and that i]n any subsequent collection action, the burden would remain on the debt collector . . . to prove the validity of the debt." *Orr* at 1381-82 citing *Harlan v. NRA Group, LLC*, 2011 U.S. Dist. LEXIS 12751 *4 (E. D. Pa. Feb. 9, 2011).

Defendants fail to cite a single case in support of their conclusory arguments that their advisement that "the debt will be assumed to be valid *by the creditor* and by this firm" does not violate § 1692g(a)(3).

Accordingly, Defendants' advisement that "the debt will be assumed to be valid *by the creditor* and by this firm" is false, deceptive, and misleading in that the least sophisticated consumer has already been informed that "this firm" is a law firm and the creditor, whose identify is not disclosed in the letter, may also determine the alleged debt to be valid.

-21-

**G. Defendants Violated § 1692j of the FDCPA by Using a Form Letter that Creates the Illusion That a Law Firm Acting as a Law Firm is Actively Involved in the Collection of a Debt**

Section 1692j of the FDCPA prohibits "the practice commonly known as 'flat-rating,' in which an individual sends a delinquency letter to the debtor portraying himself as a debt collector, when in fact he has no real involvement in the debt collection effort; in effect, the individual is lending his name to the creditor for its intimidation value, often in exchange for a 'flat' rate per letter." *Vincent v. Money Store*, 736 F.3d 88, 97 (2d Cir. 2013) citing *Nielsen v. Dickerson*, 307 F.3d 623, 639 (7th Cir. 2002).

Here, Plaintiff's Amended Complaint alleges that CROWN ASSET, which is under common-ownership and control by RIEXINGER; the Defendants are each alter egos of one another who share, *inter alia*, the same resources, equipment, mailing address, office space, and personnel. [*Id.* at ¶115]. The 8/2/12 Letter uses RIEXINGER's law firm letterhead, which prominently states, "Attorneys at Law," and which bears RIEXINGER's facsimile signature at the bottom as "Attorney at Law;" however, the mailing address on the letterhead belongs to CROWN ASSET, who was responsible for the printing and mailing of that letter to Plaintiff. [*Id.* at ¶117]. CROWN ASSET pays RIEXINGER LLC and RIEXINGER a modest fee to rent their law firm letterhead in order to send Plaintiff and other similarly situated consumers mass-produced, computer generated collection letters. [*Id.* at ¶¶115-121].

The Plaintiff need not include evidentiary detail, but must allege a factual predicate concrete enough to warrant further proceedings. *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55-56 (1st Cir. 1999) ("the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome.). The Second Circuit generally disfavors the use of Rule 12(b)(6) as the predicate for a final dismissal of an action because it summarily terminates cases on their merits. *Baker v.*

-22-

*Cuomo*, 58 F.3d 814, 818 (2d Cir. 1995).

Plaintiff's Amended Complaint makes clear, and Defendants admit, that RIEXINGER LLC and RIEXINGER never act as attorneys during the collection process of the debts they attempt to collect on behalf of CROWN ASSET, and that they have no real involvement in the debt collection effort. In short, RIEXINGER LLC and RIEXINGER are merely operating as a "conduit" for a collection process controlled by CROWN ASSET. *Vincent v. Money Store*, 736 F.3d at 103-104. These facts are sufficient to meet the pleading standard for Plaintiff to allege a claim under § 1692j, so that Plaintiff may obtain the discovery she needs, and which Defendants have sought to conceal, to prove her claims.

### H.  Because Defendants' Letter Was Deceptive, it Violates New York General Business Law § 349

General Business Law § 349 (GBL 349) bars deceptive business practices in the conduct of any business, trade, or commerce. The law is broadly construed and applies to many economic activities; empowering consumers and giving them an even playing field in their disputes with businesses that are generally in a superior position. As defendants correctly note in their motion to dismiss, GBL 349 has three elements: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result of the deceptive act or practice. However, despite Defendants contentions otherwise, and as already discussed *infra*, Defendants' letter was consumer oriented – it was sent to a consumer with the intent of collecting an illegal debt. The letter was misleading in a material respect in that it indicated an attorney was meaningfully involved in the debt collection process and sought to collect usurious interest. Finally, the plaintiff was injured as a result of the deceptive act or practice – the letter was meant to scare the consumer into believing an attorney was meaningfully involved and was prepared to engage legal "remedies" on "behalf of [their] clients." The intent was to scare

-23-

the plaintiff into foregoing rights afforded a consumer, and did indeed scare the plaintiff; thereby injuring the plaintiff.  Moreover, although not specifically pleaded, Plaintiff also suffered a pecuniary injury as a result of Defendants' actions. The extent of Plaintiff's injuries, and all others similarly situated, is an issue to be determined at trial. If needed, Plaintiff is willing to replead her cause of action to cure any perceived deficiencies regarding her pecuniary injury.

## I.   Defendants Violated § 5-505 of the New York General Obligations Law by Charging a Usury Interest Rate of 500%.

Defendants claim their 500% interest rate is allowable because usury laws do not apply to defaulted obligations. While the cases cited by Defendants discuss the application, or non-application, of usury laws, the common element amongst each of these cases, which is missing in the present case, is that the increased interest rates and the ability to increase interest rates after default are afforded <u>creditors</u> who took the risk of lending to the consumer. In other words, the ability to charge higher than usury interest rates is in essence a reward to creditors willing to extend credit to consumers; thereby providing a service the government has deemed compensable with high rates of interest on defaulted loans. Defendants are not creditors. They are debt collectors who are compensated for their "risk" with the reward of buying debt for pennies on the dollar while being able to attempt to collect the debt at full value.

Furthermore, the seminal case that allows credit card companies to exceed state usury law rates of interest, *Marquette Nat. Bank of Minneapolis vs. First Omaha Service Corp*, 439 US 299 (1978), held that it was legal for nationally-chartered banks to export the more costly terms of their cards to states where the laws regarding interest rates restricted such practices. Those practices allowed by defaulted credit card rates apply only to nationally charted banks issuing credit cards. Defendants are not the creditor that is otherwise at a lending disadvantage, they are debt collectors. Following Defendants' logic to its absurd end, debt buyers/collectors at-large would be legally

-24-

permitted to add, ***and collect***, 1,000,000% compounding daily interest to any debt belonging to a New York consumer. As such, the usury laws of New York clearly **do** apply to these debt collector Defendants.

## VIII.  CONCLUSION

As more fully set forth above, Plaintiff has sufficiently demonstrated that the claims alleged in her First Amended Complaint are properly pled and legally tenable. Accordingly, relying upon the arguments contained herein, and any oral argument advanced on this motion, Plaintiff respectfully requests the Court deny the Defendant's Motion to Dismiss or, in the alternative, permit Plaintiff leave to file a Second Amended Complaint to cure any perceived deficiencies.

Respectfully submitted this 19th Day of May, 2014.

*s/ Andrew T. Thomasson*
Andrew T. Thomasson, Esq.
THOMASSON LAW, LLC
101 Hudson Street, 21st Floor
Jersey City, NJ 07302-3929
Telephone: (201) 479-9969
Facsimile:  (855) 479-9969
E-Mail: andrew@thomassonllc.com

Abraham Kleinman, Esq. (AK-6100)
Kleinman, LLC
626 RXR Plaza
Uniondale, NY  11556-0626
Telephone: (516) 522-2621
Facsimile:  (888) 522-1692
E-Mail: akleinman@kleinmanllc.com

William F. Horn, Esq. (WH-1070)
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile:  (866) 596-9003
E-Mail: bill@wfhlegal.com

*One of the Attorneys for Plaintiff, Annmarie Avila, and all others similarly situated*

-25-