UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
ANNMARIE AVILA, on behalf of herself
and all others similarly situated,

               Plaintiffs,                      **MEMORANDUM & ORDER**

        - against -                      13 CV 4349 (RJD) (LB)

RIEXINGER & ASSOCIATES, LLC,
STEPHEN P. RIEXINGER, and CROWN
ASSET MANAGEMENT, LLC,

               Defendants.
-------------------------------------------------------- x
SARA ELROD, on behalf of herself and all
others similarly situated,

               Plaintiffs,

        - against -                      14 CV 2740 (RJD) (LB)

RIEXINGER & ASSOCIATES, LLC,
STEPHEN P. RIEXINGER, and BUREAS
INVESTMENT GROUP PORTFOLIO NO.
15, LLC,

               Defendants.
-------------------------------------------------------- x

DEARIE, District Judge

       In these consolidated class actions, plaintiffs Annmarie Avila ("Avila") and Sara Elrod

("Elrod") allege that defendants Riexinger & Associates, LLC ("Riexinger & Associates"),

Stephen P. Riexinger ("Mr. Riexinger"), Crown Asset Management, LLC ("Crown Asset

Management"), and Bureaus Investment Group Portfolio No. 15, LLC ("Bureaus Investment

Group") sent them debt collection letters, the terms of which violate the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*[1]  Additionally, Avila alleges in her first

amended complaint that defendants have also violated New York General Business Law § 349,

New York General Obligations Law § 5-501, *et seq.*, and the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*  Defendants have moved to dismiss these

class actions, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that plaintiffs have failed to

plead a violation of the FDCPA or other unlawful act as a matter of law.  For the reasons stated

below, defendants' motions to dismiss are granted.

<u>BACKGROUND</u>

Sometime prior to August 2, 2012, Avila incurred a financial obligation to non-party

Wells Fargo, which she defaulted on.  After her default, Wells Fargo deemed her debt

uncollectable, and the debt was transferred to Crown Asset Management, which is in the

business of collecting defaulted debts.  Apparently acting on behalf of Crown Asset

Management, Riexinger & Associates sent Avila the following letter on August 2, 2012:

Riexinger & Associates, LLC
Attorneys at Law
P.O. Box 956188
Duluth, GA 30095-9504
(800) 713-7780

File No.:          XXXXX
Account No.:       XXXXX
Current Balance:   $1,845.31

Dear Annmarie Avila:

The firm of Riexinger & Associates, LLC is a law firm representing CROWN
ASSET MANGEMENT, LLC, the current creditor of the above referenced

---

[1]  Avila sued Riexinger & Associates, Mr. Riexinger, and Crown Asset Management, but not Bureaus Investment Group.  Elrod sued Riexinger & Associates, Mr. Riexinger, and Bureaus Investment Group, but not Crown Asset Management.  Nonetheless, this Court consolidated these class actions and will dispose of the pending motions to dismiss by way of this single opinion.

2

account which originated with WELLS FARGO. In this regard, the above referenced matter has been placed with us for collection and such action as necessary to protect our client.

At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.

If you have any questions regarding this matter, please contact this office at 678-205-1597 or toll free at 800-713-7780 between the hours of 8:00 A.M. and 8:00 P.M. on Monday through Friday.

CONSUMER NOTICE PURSUANT TO 15 U.S.C. SECTION 1692(G)

You are hereby given notice of the following information concerning the above referenced debt: 1. Unless, within 30 days after receipt of this notice you dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the creditor and by this Firm. 2. If you notify us in writing within said 30 days that the debt, or any portion therefore is disputed, we will obtain verification of the debt, or a copy of any judgment against you, and we will mail such verification to you. 3. In addition, upon your written request within said 30 days, this Firm will provide the name and address of the original creditor if the original creditor is different from the current creditor. 4. This firm is attempting to collect a debt on behalf of the creditor and any information obtained will be used for that purpose. YOUR RIGHTS UNDER FEDERAL LAW TO REQUEST VERIFICATION OF YOUR OBLIGATION TO OUR CLIENT WITHIN 30 DAYS MUST BE ASSERTED IN WRITING AND IS NOT AFFECTED BY OUR REQUEST THAT YOU CONTACT OUR OFFICE BY TELEPHONE.

Sincerely,

Stephen P. Riexinger
Attorney at Law
Riexinger & Associates, LLC

Riexinger & Associates, LLC is acting as a debt collector and this is a communication from a debt collector, as defined by U.S.C. 1692(A)(6). This is an attempt to collect a debt and any information obtained will be used for that purpose.
**PLEASE REFER ALL CORRESPONDENCE TO RIEXINGER & ASSOCIATES, LLC**

The entirety of the letter is printed on a single page, and a single font size is used throughout the body of the letter.

3

Like Avila, Elrod incurred a financial obligation—in her case, to Capital One Card Services, Inc. ("Capital One").  Capital One determined that the debt was uncollectible and the debt was transferred to Bureaus Investment Group, which in turn hired Riexinger & Associates to attempt to collect the debt.  On May 3, 2013, Riexinger & Associates sent Elrod a letter nearly identical to the collection letter sent to Avila.  The letters only differ in a few respects: (1) the letter is addressed to Elrod and states that her current balance is $6,815.73; (2) the letter names Capital One instead of Wells Fargo and Bureaus Investment Group instead of Crown Asset Management; and (3) at the bottom of the letter it states "NY License Number 1414772." According to the plaintiffs' complaints, Mr. Riexinger is not admitted to practice law in New York and there are no associates employed by Riexinger & Associates.  Neither plaintiff has alleged that defendants took any other action against them regarding their debts.

On July 31, 2013, Avila filed a class action complaint on behalf of New York residents that were sent letters substantially similar to the letter quoted above.  On May 1, 2014, Elrod filed a class action complaint seeking to represent the same class.  Both complaints allege that the letter violates the FDCPA by (i) making false or misleading representations regarding the involvement of a New York-licensed attorney, in violation of sections 1692e(3), (5) and (10), (ii) failing to indicate that the debt may increase due to interest, in violation of sections 1692e(2)(A) and 1692g, and (iii) providing that the creditor will assume the debt is valid if not disputed within 30 days, in violation of section 1692g(a)(3).  Additionally, Avila alleges in her first amended complaint, dated March 3, 2014, that defendants are charging an undisclosed usurious interest rate, in violation of section 1692f, that defendants failed to name Avila's creditor to which the debt is owed, in violation of 1692g, and that defendants are flat-rating in violation of section 1692j.  Further, Avila alleges that defendants have violated New York

General Business Law § 349, New York General Obligations Law § 5-501 and RICO.
Defendants in the <u>Avila</u> action moved to dismiss on April 18, 2014, and the defendants in the
<u>Elrod</u> action moved to dismiss on October 10, 2014.

DISCUSSION

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a
claim to relief that is plausible on its face." <u>Brown v. Daikin Am. Inc.</u>, 756 F.3d 219, 225 (2d
Cir. 2014) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S.
662, 678 (2009).  Nonetheless, while the "plausibility standard is not akin to a 'probability
requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."
<u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556).

A.    FDCPA Claims

The FDCPA was enacted to "eliminate abusive debt collection practices by debt
collectors" and establish "certain rights for consumers whose debts are placed in the hands of
professional debt collectors for collection." <u>Kropelnicki v. Siegel</u>, 290 F.3d 118, 127 (2d Cir.
2002) (citations omitted).  "These purposes inform the FDCPA's many provisions." <u>Jacobson v.
Healthcare Fin. Servs., Inc.</u>, 516 F.3d 85, 89 (2d Cir. 2008).  Among other things, the Act bars
the use of "any false, deceptive, or misleading representation or means in connection with the
collection of any debt," 15 U.S.C. § 1692e, while proscribing "unfair or unconscionable means
to collect or attempt to collect any debt," 15 U.S.C. § 1692f.  It also gives "the consumer the
right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the
debt." <u>Jacobson</u>, 516 F.3d at 89 (citing 15 U.S.C. § 1692g).  The legislative history of the

FDCPA abounds with illustrations of the kinds of abuse that the Act was meant to eliminate, see S. Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699, and the Act itself sets forth a non-exclusive list of examples of particular practices that debt collectors are forbidden to employ, see 15 U.S.C. § 1692e.  "[T]he question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'"  Jacobson, 516 F.3d at 90 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)).  "Under this standard, 'collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.'"  Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012) (quoting Clomon, 988 F.2d at 1319)).  But, the FDCPA's protections do "'not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the standard 'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'"  Id. at 234 (quoting Clomon, 988 F.2d at 1319)).  Accordingly, "because the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law" that the Court may resolve on a motion to dismiss.  Quinteros v. MBI Associates, Inc., 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) (quoting Castro v. Green Tree Servicing LLC, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013)).

      1.      15 U.S.C. § 1692e(3)

Section 1692e(3) prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).  In other words, "[o]ne cannot . . . *mislead* the debtor regarding meaningful 'attorney' involvement in the debt collection process." Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 364 (2d Cir. 2005) (emphasis in original).  Plaintiffs allege that Mr. Riexinger and Riexinger &

6

Associates, which (according to plaintiffs) is nothing but a debt collection agency, falsely imply through their letters that they are attorneys acting as attorneys, in violation of section 1692e(3). Plaintiffs argue that the defendants' use of law firm letterhead, an attorney's signature block, and the words "NY License Number" would mislead the "least sophisticated consumer" to believe an attorney is meaningfully involved in the collection process, when that is, in fact, not the case.

The Second Circuit has recognized that "the use of [an attorney's] letterhead and signature on [a] collection letter [is] sufficient to give the least sophisticated consumer the impression that the letters were communications from an attorney"—an impression that is "false and misleading" because the attorney "played virtually no day-to-day role in the debt collection process." Clomon, 988 F.2d at 1320.  However, where such a letter includes "a clear disclaimer explaining the limited extent of [an attorney's] involvement in the collection" of a debt, there is no violation of section 1692e(3).  Greco, 412 F.3d at 365.  Here, defendants' letter contains such a disclaimer.  In fact, the disclaimer at issue here is identical to the disclaimer the Second Circuit approved of in Greco.  The cases cited by plaintiffs are inapposite.  Unlike the collection letters at issue in Gonzalez v. Kay, 577 F.3d 600, 606-07 (5th Cir. 2009), and Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 1003 (3d Cir. 2011), the disclaimers in the letters at issue here are not contradicted or overshadowed by their placement in the letters or the surrounding language.  Quite the opposite, the letters here are almost identical in form to the letter approved of in Greco—a fact conspicuously omitted from plaintiffs' briefs.  Accordingly, as a matter of law, the letters do not violate section 1692e(3).

      2.      15 U.S.C. § 1692e(5)

To allege a violation of section 1692e(5), a plaintiff must show that defendants (1) "threat[ened] to take any action," (2) "that cannot legally be taken or that was not intended to

be taken." 15 U.S.C. § 1692e(5).  The threatened legal action must be "authorized, likely and imminent."  Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993).  The language of the communication, "taken as a whole," must leave the least sophisticated reader with the impression that "*some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment."  Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 25 (2d Cir. 1989) (emphasis in original).

Plaintiffs allege that defendants' letters threaten imminent legal action because they (1) are from a law firm and are printed on legal letterhead with a New York license number, (2) inform the consumer that they will take "such action as necessary to protect our client," and (3) indicate that their client "may consider additional remedies."  Plaintiffs have failed to allege a violation of section 1692e(5).  Nothing in defendants' letters, taken as a whole, indicates that legal action is likely or imminent.  "Several courts have held that a letter written on a law firm's letterhead is insufficient, on its own, to imply litigation is imminent."  Nichols v. Frederick J. Hanna & Associates, PC, 760 F. Supp. 2d 275, 279 (N.D.N.Y. 2011) (collecting cases); see also Kapeluschnik v. Leschack & Grodensky, P.C., No. 96-CV-2399, 1999 WL 33973360, at *6-7 (E.D.N.Y. Aug. 26, 1999) (the assertion that any collection letter from an attorney is an implied threat of litigation is "not viable").  For the same reason, the presence of the words "NY License Number" on the bottom of Elrod's letter does not imply legal action.

Additionally, "[a] letter that merely advises that the creditor has various options to pursue if the debtor fails to make a payment does not constitute a threat."  Nichols, 760 F. Supp. 2d at 280 (citing cases); see also Knowles v. Credit Bureau of Rochester, Div. of Rochester Credit Ctr., Inc., No. 91-CV-14, 1992 WL 131107, at *2 (W.D.N.Y. May 28, 1992) (no violation of section 1692e(5) where the letter did not warn that "legal action has already been taken" but

rather "informed plaintiff that the creditor will have to consider legal action if payment is not made"). The statements that defendants may consider "additional remedies" or "such action as necessary" to protect their clients do not threaten imminent legal action. See Nichols, 760 F. Supp. 2d at 280 (a letter "cannot be said to imply that legal action has already been or is about to be initiated" where there "is no mention of 'litigation,' 'lawsuit,' 'court,' or other like terms associated with legal action"). As the Northern District of Illinois recently concluded when considering a nearly-identical letter from Riexinger & Associates:

> The references to taking "such action as necessary to protect [Riexinger's] client" and to "consider[ing] additional remedies" at unspecified times do not constitute a threat of litigation. They are vague; read literally, there is no content to them other than a promise to continue collection efforts, which is expected and is not problematic unless presented in a way that obscures the statutory entitlement to validate the debt. Even explicit statements about the right to take legal action are not considered threats of litigation, and here there is no reference whatsoever to courts, lawsuits, judgments, pleadings, damages, attorneys' fees, or any trappings of litigation. And the fact that the letter was sent by a debt collector that is also a law firm does not tip the balance such that "remedies" refers to litigation. There is no reason to believe than an unsophisticated consumer would assume, contrary to the plain language of the notice, that Riexinger was doing something other than "ACTING AS A DEBT COLLECTOR" just because it is organized as a law firm. It was accurate for Riexinger to identify himself as an attorney acting as a debt collector, and the fact that he did so does not turn the otherwise benign language into a litigation threat. That is especially so where the notice clearly states that no Reixinger attorney had even reviewed the "particular circumstances" of [plaintiff's] account; litigation was not foreordained.

Aker v. Bureaus Inv. Grp. Portfolio No. 15 LLC, No. 12-CV-3633, 2014 WL 4815366, at *5-6 (N.D. Ill. Sept. 29, 2014) (citations omitted). That reasoning applies equally here, and therefore plaintiffs' claims under section 1692e(5) are dismissed.

   3.  15 U.S.C. § 1692e(10)

"Section 1962e(10) of the FDCPA is a 'catch-all' provision that prohibits '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.'" Gutierrez v. GC Servs. Ltd. P'ship, No. 09-CV-4606,

9

2010 WL 3417842, at *3 (E.D.N.Y. Aug. 27, 2010) (quoting 15 U.S.C. § 1692e(10)), aff'd, 430

F. App'x 8 (2d Cir. 2011).  "The analysis here is somewhat duplicative because a section

1692e(10) violation frequently accompanies the violation of a more specific section 1692e

provision." Kapeluschnik, 1999 WL 33973360, at *9 (collecting cases).  Here, plaintiffs allege

that the letters sent by defendants are deceptive, and violate section 1692e(10), for the same

reasons they allege the letters violated section 1692e(3) and (5).  For the same reasons that

plaintiffs failed to plead a claim under sections 1692e(3) and (5), plaintiffs' claim under section

1692e(10) also fails.  See Kapeluschnik, 1999 WL 33973360, at *9; Herzlinger v. Nichter, No.

09-CV-00192, 2011 WL 1434609, at *6 (S.D.N.Y. Feb. 9, 2011).

    4.    <u>15 U.S.C. §§ 1692g(a)(1) and 1692e(2)(A)</u>

Section 1692g(a) requires that debt collectors, in their initial communications with the

consumer, list, *inter alia*, "the amount of the debt."  15 U.S.C. § 1692g(a)(1).  "Under this

section, debt collectors must disclose the amount past due as of the date the letter is sent."

Adlam v. FMS, Inc., No. 09-CV-9129, 2010 WL 1328958, at *3 (S.D.N.Y. Apr. 5, 2010) (citing

Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 875-76 (7th

Cir. 2000)).  Additionally, section 1692e(2)(A) prohibits false representations of "the character,

amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Plaintiffs allege that defendants

have violated sections 1692g(a)(1) and 1692e(2)(A) by failing to state that the amount of debt

will increase over time due to interest or fees.  This Court cannot agree.

There is a division of authority as to whether a debt collector must disclose that the

amount of the debt will increase over time due to interest or fees.  Compare Pifko v. CCB Credit

Servs., Inc., No. 09-CV-3057, 2010 WL 2771832, at *3 (E.D.N.Y. July 7, 2010) (no violation),

with Jones v. Midland Funding, LLC, 755 F. Supp. 2d 393, 397 (D. Conn. 2010) (finding a

10

violation of section 1692g(a)).[2]  This Court finds the arguments *against* requiring such a disclosure to be most persuasive.  First, the text of section 1692g(a)(1) only requires a disclosure of "the amount of the debt."  Nothing in the FDCPA requires a debt collector to inform a consumer that the debt may increase because of interest.  See Adlam, 2010 WL 1328958, at *3.

Second, to comply with section 1692g(a), "[d]ebt collectors must state the amount of the debt, without adding language that may overshadow or contradict other language informing the consumer of her rights."  Pifko, 2010 WL 2771832, at *3 (citing Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996)).  "[C]ourts have held that additional language about further increases and charges in debt collection letters misled consumers about the amount owed."  Id. (citing Kolganov v. Phillips & Cohen Associates, Ltd., No. 02-CV-3710, 2004 WL 958028, at *3 (E.D.N.Y. Apr. 8, 2004), and McDowall v. Leschack & Grodensky, P.C., 279 F. Supp. 2d 197, 199 (S.D.N.Y. 2003)).  Requiring debt collectors to disclose that the amount of debt will increase over time due to interest would be to require them to insert language in their collection letters that other Courts have previously held unlawful.  That cannot be what Congress intended.

Third, there is nothing confusing or misleading about the statement of a "current balance" in defendants' letters.  The letters clearly state the total balance due.  See Pifko, 2010 WL 2771832, at *4.  Were a consumer to attempt to pay off its debt upon receiving one of defendants' letters, he or she would pay the "current balance" listed on the letter.  The fact that this amount could increase over time does not convert clear language into a misleading statement.  "[E]ven the most unsophisticated consumer would understand that credit card debt

---

[2] In attempting to distinguish Pifko, plaintiffs claim that "[i]n Jones the Second Circuit specifically declined to follow Pifko noting that it was . . . problematic."  Plaintiffs' eleven citations to Jones as a Second Circuit decision (six in their Avila brief and five in their Elrod brief) are particularly troubling as Jones is a decision from the District of Connecticut, not the Second Circuit.  Suffice it to say, this Court does not afford Jones any special weight, and plaintiffs' counsel would do well to be more exacting in future legal briefing.

accrues interest." Weiss v. Zwicker & Associates, P.C., 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009). As defendants are not required to disclose that the amount of debt will increase over time due to interest or fees, the statement of the "current balance" on letters sent to plaintiffs was lawful, and plaintiffs' claims under sections 1692g(a)(1) and 1692e(2)(A) are dismissed.

     5.    15 U.S.C. § 1692g(a)(2)

Section 1692g(a)(2) requires that debt collection letters identify "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). "The court's role is to assess whether the 'least sophisticated consumer' who read the entire letter would have been aware that the name of the creditor appeared in the letter pursuant to 1692g(a)(2)." Dewees v. Legal Servicing, LLC, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007).

Avila claims that defendants violated the FDCPA by falsely identifying Crown Asset Management as the "current creditor" in the debt collection letter. Avila bases this conclusion on the definition of "creditor" in section 1692a of the Act, and argues that because Crown Asset Management is alleged to have purchased her debt in default, it cannot be the "creditor" of the debt as a matter of law.

While "there appears to be little precedent" on the kinds of statements that sufficiently name the creditor to whom a debt is owed, courts have provided some guidance. Id. For instance, in Hernandez v. Affiliated Grp., Inc., No. 04-CV-4467, 2006 WL 83474, at *2 (E.D.N.Y. Jan. 12, 2006), Judge Gleeson held that a collection letter stating "the name of the creditor to whom the debt was owed," but not stating "the name of the original creditor" complied with section 1692g(a)(2). See also Wright v. Phillips & Cohen Associates, Ltd., No. 12-CV-4281, 2014 WL 4471396, at *4-5 (E.D.N.Y. Sept. 10, 2014) (letter identifying the entity that had purchased plaintiff's debt in default as "client" and also listing the "original creditor"

complied with the Act).  By contrast, merely naming the entity that owns the debt, but not identifying it as a "creditor," while also identifying the "original creditor," has been held to be a violation of section 1692g(a)(2).  Sparkman v. Zwicker & Associates, P.C., 374 F. Supp. 2d 293, 300-01 (E.D.N.Y. 2005).  Also, a statement that simply says the original creditor sold the debt, but does not state who the current owner of the debt is, "fails . . . to eliminate any factual question as to whether the least sophisticated consumer would understand (1) to whom [the original creditor] sold the debt or (2) who owned the debt at the time the letter was sent." Dewees, 506 F. Supp. 2d at 132.

Here, defendants' letter clearly names Crown Asset Management as the "current creditor" of the account, and indicates that the account originated with Wells Fargo.  Avila's complaint lacks any facts suggesting that there is some owner of the debt other than Crown Asset Management.  Thus, the letter sufficiently notifies the consumer to whom the debt is owed and satisfied the requirements of the FDCPA.  See Suellen v. Mercantile Adjustment Bureau, LLC, No. 12-CV-00916, 2012 WL 2849651, at *5 (N.D. Cal. June 12, 2012) (holding that identifying an entity that purchased the plaintiff's debt in default as the "current creditor" did not violate the FDCPA).  In fact, if defendants had done as Avila suggests, they likely would have run afoul of section 1692g.  Defendants cannot simply identify Wells Fargo as the previous creditor without identifying the current creditor as well.  See Dewees, 506 F. Supp. 2d at 132.  Likewise, if defendants were to state that Wells Fargo sold the debt, but not state that Crown Asset Management is the current owner, that might also constitute a violation.  See Sparkman, 374 F. Supp. 2d at 300-01.  Defendants have taken the most sensible course—they have identified the current owner of the debt and the original creditor in a clear manner—and therefore have

satisfied the requirement of section 1692g(a)(2).[3]  Avila's claim under this section of the Act is dismissed.

      6.    <u>15 U.S.C. § 1692g(a)(3)</u>

Section 1692g(a)(3) requires that debt collection letters include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."  15 U.S.C. § 1692g(a)(3).  Plaintiffs alleges that defendants have violated this provision because defendants' letters state "[u]nless, within 30 days after receipt of this notice you dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by *the creditor* and by this Firm."  In other words, plaintiffs argues that defendants violated the FDCPA by indicating that *the creditor* (in addition to the debt collector) would assume the debt as valid if no protest was lodged within thirty days.  Section 1692g(a)(3) simply does not prohibit creditors from also assuming the debt is valid, and the Second Circuit has rejected the very argument advanced by plaintiffs here:

> The letter's language tracks the statute almost verbatim; only the reference to "creditor" differs from the FDCPA itself. When read by the least sophisticated debtor, nothing in the letter's current wording would discourage a debtor from contesting the debt within the thirty day window. (To the contrary, the effect of the "creditor" addition, if any, could only be additional encouragement to contest the debt.) Nor could the letter be read, in any reasonable fashion, to suggest that the creditor's rights somehow change after thirty days. Quite simply, we do not see how the addition reduces the veracity or lucidity of the letter's disclosure statement.

---

[3] Avila alleges that the current creditor of the debt is unknown, and on "information and belief" is not one of the defendants.  The Court declines to find a violation on the basis of such conclusory allegations.

Greco, 412 F.3d at 365-66.  That reasoning is controlling here, and cases cited by plaintiffs are neither apposite nor binding on this Court.  Plaintiffs' claims under section 1692g(a)(3) are dismissed.

       7.    <u>15 U.S.C. § 1692f</u>

      Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The provision provides a non-exclusive list of conduct that violates the FDCPA, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Avila alleges in her amended complaint that defendants have attempted to collect interest on her debt in excess of the interest rate set by New York's usury laws, in violation of section 1692f(1).

      Defendants argue that this claim is time barred.  The FDCPA provides a one-year statute of limitations for actions seeking to redress violations of the Act.  15 U.S.C. § 1692k(d).  Defendants sent a collection letter to Avila on August 2, 2012, which advised her of her "current balance."  Avila did not assert a claim under section 1692f until she filed her amended complaint on March 3, 2014.  Accordingly, her claim based on violation of section 1692f falls outside the one-year limitation period.  Avila seeks to avoid that bar.  She argues first that the new claim "relates back" to the claims in the original complaint, which was filed on July 31, 2013, under Rule 15 of the Federal Rules of Civil Procedure.  Alternatively, she hints (although does not explicitly argue) that principles of equitable tolling excuse any late filing of this claim.

      Under Rule 15, an amendment relates back to the date of the original pleading if it asserts a claim that "arose out of the conduct, transaction, or occurrence set out—or attempted to be set

out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  Avila argues that her new claim is

based on the same collection letter and therefore arose out of the same transaction or occurrence.

That is not enough.  "This is not a situation in which the new allegations merely 'amplify the

facts alleged in the original pleading or set forth those facts with greater specificity.'"  Dumont v.

Litton Loan Servicing, LP, No. 12-CV-2677, 2014 WL 815244, at *15 (S.D.N.Y. Mar. 3, 2014)

(quoting Oliner v. McBride's Indus., Inc., 106 F.R.D. 9, 12 (S.D.N.Y. 1985)).  Rather, Avila has

set forth an entirely new theory of liability, totally independent from the operative facts and

claims set forth in her original complaint, and therefore this claim does not relate back.  It would

be one thing if the amended complaint pled an additional, facial defect to the letter (e.g., a

violation of section 1692g).  But in alleging a violation of 1692f, the amended complaint relies

on a whole new set of facts relating to the rate of interest being charged—operative facts not at

issue in the original complaint.  See Wade v. Rosenthal, Stein & Associates, LLC, No. 11-CV-

5672, 2012 WL 3764291, at *2 (E.D.N.Y. Aug. 29, 2012) (because the "operative facts giving

rise to the new claims are different" and then "manner in which the letters are alleged to

constitute violations of the FDCPA" differed from the manner set forth in the original complaint,

there was no relation back); Victori v. Accelerated Bureau of Collections of Ohio, Inc.,, No. 96-

CV-0263, 1997 WL 9788, at *2 (W.D.N.Y. Jan. 2, 1997) (since plaintiff's "new claims . . . do

not arise from the conduct set forth in the original Complaint but are instead predicated upon a

distinct and separate set of operative facts . . . the relation-back doctrine is inapplicable").

Likewise, there is no basis, based on the allegations in the amended complaint, to

conclude that the statute of limitations on this claim is equitably tolled.  Notably, while Avila's

amended complaint contains allegations suggesting that her claim could be equitably tolled, this

is not an argument she presses in her opposition to defendants' motion to dismiss.  In any event,

equitable tolling does not apply here.  "A statute of limitations may be tolled in extraordinary circumstances, if a plaintiff establishes that: (1) the defendant concealed from him the existence of his cause of action; (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action; and (3) his continuing ignorance was not attributable to lack of diligence on his part."  Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (citing State of N.Y. v. Hendrickson Bros., 840 F.2d 1065, 1083 (2d Cir. 1988)).  Avila only alleges in conclusory fashion that defendants concealed information from her regarding the interest sought to be collected, and that she remained ignorant of this prior to October 2013.  Avila "offer[s] no particular facts suggesting that [d]efendants took affirmative steps to conceal these violations or the existence of a cause of action," and has "failed to allege with sufficient particularity that [her] claimed ignorance of a cause of action under the FDCPA was not attributable to a lack of diligence."  Conklin v. Jeffrey A. Maidenbaum, Esq., No. 12-CV-3606, 2013 WL 4083279, at *7-8 (S.D.N.Y. Aug. 13, 2013); see also Boyd v. J.E. Robert Co., No. 05-CV-2455, 2011 WL 477547, at *9-11 (E.D.N.Y. Feb. 2, 2011).  Therefore, Avila's claim under section 1692f is dismissed as untimely.[4]

8.    15 U.S.C. § 1692j

Avila claims that defendants violated 15 U.S.C. § 1692j, which prohibits a creditor from falsely creating the impression that a third party is involved in the debt collection.  The purpose of this section is to prevent the abusive practice known as "flat-rating."  Rumpler v. Phillips & Cohen Associates, Ltd., 219 F. Supp. 2d 251, 260 (E.D.N.Y. 2002); Franceschi v. Mautner-Glick

---

[4] Because Avila's claim under section 1692f is dismissed as untimely, it is not necessary for this Court to consider whether Avila has otherwise pled a claim under section 1692f.  However, this Court has its doubts as to whether Avila can allege a plausible claim under section 1692f(1) that defendants have attempted to collect a rate of interest not "permitted by law."

Corp., 22 F. Supp. 2d 250, 256 (S.D.N.Y. 1998).  "A 'flat-rater' is one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once."  Franceschi, 22 F. Supp. 2d at 256 (quoting S. Rep. No. 95–382).  "The flat-rater merely sells the dunning letters and is not in the debt collection business."  Orenbuch v. N. Shore Health Sys., Inc., 250 F. Supp. 2d 145, 150 (E.D.N.Y. 2003).  "After purchasing these letters, the creditor sends them to his debtor in order to give the false impression of the existence of a third party debt collector and to instill a sense of urgency in the debtor."  Id.

Avila has not pled a traditional flat-rating claim.  She does *not* allege that Riexinger & Associates and Mr. Riexinger are not in the debt collection business.  Quite the opposite, the amended complaint alleges that both defendants are debt collectors.  Her claim is that Crown Asset Management and Riexinger & Associates are alter egos of one another because they are alleged to be under common ownership, and therefore section 1692j has been violated because while the collection letter suggests that the defendants are separate entities, they are in fact one in the same.  Her complaint, though, fails to allege a violation of section 1692j.

To start, this Court has serious doubts as to whether such a theory—which does not concern flat-rating—, even if adequately alleged, states a claim under section 1692j.  See Mizrahi v. Network Recovery Servs., Inc., No. 98-CV-4528, 1999 WL 33127737, at *7 (E.D.N.Y. Nov. 5, 1999) (dismissing a section 1692j claim because "plaintiff has alleged no facts that any of the defendants did anything remotely resembling flat-rating" and instead argued "unpersuasively and confusingly that defendants' forms or collection letters were deceptive because they appeared to be from a third party collection agent and attorneys' firm when they were in fact not").  Even if section 1692j is not limited to flat-rating practices, Avila's complaint

fails to allege sufficient facts to establish "an abandonment of separateness" between Crown Asset Management and Riexinger & Associates. See Orenbuch, 250 F. Supp. 2d at 150-51. And even if Crown Asset Management exercised complete control over the operations of Riexinger & Associates, "there is no allegation that the letter sent by [the defendant] was intended to create a 'false belief' that 'a person other than the creditor' was collecting [plaintiff's] debt 'when in fact such person [was] not so participating.'" Franceschi, 22 F. Supp. 2d at 256. Accordingly, Avila's claim under section 1692j is dismissed.

      B.    RICO

In her amended complaint, Avila alleges that defendants violated RICO by collecting portfolios of and receiving income from "unlawful debts." In their motion to dismiss, defendants argue that Avila lacks standing because she has not pled an injury to her "business or property," 18 U.S.C. § 1964(c), and that she has failed to plead a violation of section 1962. Avila does not respond to any of these arguments in her opposition to defendants' motion. The RICO claim is dismissed for the reasons stated in defendants' motion. See Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (plaintiff's claims deemed abandoned by failing to address them in opposition to defendant's motion to dismiss) (collecting cases).

      C.    State Law Claims

          1.    New York General Business Law § 349

Avila has also pled a violation of New York General Business Law § 349 based on defendants' alleged (i) misrepresentations that an attorney was meaningfully involved in the debt collection process, and (ii) attempts to collect usurious interest rates. "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."

Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).  "Section 349 mandates a showing that plaintiff's injury be a result of reliance on a materially deceptive act or practice."  Berrios v. Sprint Corp., No. 97-CV-0081, 1998 WL 199842, at *4 (E.D.N.Y. Mar. 16, 1998).  Additionally, "[w]hile a claimant under section 349 need not allege pecuniary harm, she must allege some harm compensable in a court of law."  Id.

Defendants argue that Avila has failed to allege that she was injured by defendants' actions or that she relied upon defendants' alleged misrepresentations to her detriment.[5]  This Court agrees.  Avila has not alleged that she did not act or gave up any right because of defendants' allegedly deceptive letter.  Because she has not alleged that she was harmed by defendants' actions, she cannot state a claim under section 349.  Id. ("Having failed to allege monetary, emotional, or physical consequences arising from the letter and having failed to allege that she abstained from exercising a statutory right that he otherwise would have exercised, she has failed to state a claim under section 349 of the New York General Business Law.");  see also LaCourte v. JP Morgan Chase & Co., No. 12-CV-9453, 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013); Sokolski v. Trans Union Corp., 53 F. Supp. 2d 307, 315-16 (E.D.N.Y. 1999).  The claim is therefore dismissed.

2.    New York General Obligation Law § 5-501

Avila alleges that defendants have violated New York General Obligation Law § 5-501 *et seq.*, by charging, collecting, or attempting to collect interest in excess of the civil usury limit of 16 percent.  She is mistaken.  "[T]he usury laws do not apply to defaulted obligations" or "interest . . . charged only on . . . past due debts."  Manfra, Tordella & Brookes, Inc. v. Bunge,

---

[5] In light of this Court's rulings on Avila's other claims, it is far from clear that Avila has adequately alleged the second element of a section 349 claim—that the act or practice was misleading in a material respect.  Defendants, though, did not challenge the first two elements of this claim in their motion.

794 F.2d 61, 63 n.3 (2d Cir. 1986); see also In re Integrated Res., Inc., No. 92-CV-4555, 1995

WL 234975, at *6 (S.D.N.Y. Apr. 21, 1995) ("penalties or late fees . . . do not constitute usury,

since New York's usury statutes do not apply to defaulted obligations").  Avila argues that the

right after default to increase interest rates above 16 percent is only afforded to "creditors who

took the risk of lending to the consumer."  There is no basis for this limitation, and Avila does

not cite any precedent to support it.  Even if Avila is correct that "the ability to charge higher

than usury interest rates is in essence a reward to creditors willing to extend credit to

consumers," there is no reason why that right must be limited to the *original creditor*, or cannot

be transferred or assigned to a new creditor, such as Crown Asset Management.  Avila's claim

under section 5-501 is dismissed.[6]

* * *

Congress passed the FDCPA for the purpose of protecting consumers from abusive

practices that were at that time commonplace by professional debt collectors.  "The legislative

history . . . explains that the need for the FDCPA arose because of collection abuses such as use

of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours,

misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to

friends, neighbors, or an employer, obtaining information about a consumer through false

pretense, impersonating public officials and attorneys, and simulating legal process.'"

Kropelnicki, 290 F.3d at 127 (quoting S. Rep. No. 95–382, at 2).  The statute, however, has

evolved into something dramatically different than its original purpose would suggest.

Enterprising and imaginative advocates have extended its protections to a wide variety of

---

[6] To the extent Avila was also asserting a claim under the criminal usury law, New York Penal Law § 190.40—a claim not defended in her opposition—that claim is also dismissed because there is no private cause of action under the criminal usury statute.  See Scantek Med., Inc. v. Sabella, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008).

communications that, like the content in question here, do not on their face reflect obvious

deception or dissembling.  As one of my colleagues recently noted, "these cases are brought on

behalf of the same debtor-plaintiffs, who seize on the most technical alleged defects in collection

notices or telephone communications, often raising claims of 'confusion' or 'deception'

regarding practices as to which no one, not even the least sophisticated consumer, could

reasonably be confused or misled."  Huebner v. Midland Credit Mgmt., Inc., No. 14-CV-6046,

2015 WL 569194, at *1 (E.D.N.Y. Feb. 11, 2015) (Cogan, J.).  In this Court's view, no

reasonable assessment of the correspondence in question here—as in a growing number of cases

before this Court—could be found to violate the letter or spirit of the Act.

For the reasons stated above, plaintiffs have failed to allege plausible claims for relief on

all counts.  Accordingly, at this time it is unnecessary for the Court to consider defendants'

additional arguments for dismissal.  These actions are dismissed in their entirety.

SO ORDERED.

Dated: Brooklyn, New York
     April 14, 2015

                         /s/ Judge Raymond J. Dearie

                         RAYMOND J. DEARIE
                         United States District Judge